LEHMAN, Justice.
[T1] Eugene John Stringari (Stringari) appeals a district court order denying his *928 petition to reopen the probate proceedings of the estate of Lance Roy Novakovich (the decedent). Stringari claims that he was a reasonably ascertainable creditor, but that he was not given actual notice of the probate proceedings and, therefore, he is entitled to make his claims against the estate. Concluding that the district court applied an improper standard, we reverse and remand the district court's order denying the petition.
ISSUES
[¶2] Stringari sets out three issues for review:
1. Whether the district court erred by failing to permit Appellant to conduct discovery pursuant to the Wyoming Rules of Civil Procedure prior to its determination that Appellant was not a "reasonably ascertainable creditor" of this estate and that Appellant was not entitled to equitable relief due to the "peculiar cireumstances" of the case, pursuant to W.S. § 2-7-708(c)?
2. Whether the district court erred in determining that Appellant was not a "reasonably ascertainable creditor" of said estate as intended by W.S. § 2-7-708(c)(ii), to whom actual notice of the pending estate should have been supplied pursuant to W.S. § 2-7-205(a)@)?
3. Whether the district court erred in determining that Appellant as creditor of said estate was not entitled to equitable relief due to "peculiar cireumstances" pursuant to W.S. § 2-7-708(c)i)?
Diane M. Taylor (Taylor), personal representative of the decedent's estate, phrases the issues as:
I. Was the Appellant a person authorized by the Wyoming Probate Code to reopen the Estate of Lance Roy Novakovich?
A. Whether the district court sitting in probate correctly determined that the Appellant was not a "reasonably ascertainable" creditor entitled to actual notice of the probate proceedings and that the Appellant was barred from bringing a claim against the Estate by the non-claim statute.
B. Whether the Appellant was entitled to equitable relief due to "peculiar circumstances" pursuant to Wyo. Stat. Ann. § 2-7-708(c)@).
II. Was the Appellant entitled to discovery pursuant to the Wyoming Rules of Civil Procedure prior to the adversary proceeding?
FACTS
[¶3] Stringari was involved in an automobile accident with the decedent sometime around July 29, 1999. The decedent died of causes unrelated to the accident on May 14, 2000. His will was admitted to probate; and his daughter, Taylor, was appointed personal representative. In her final report and petition to distribute the estate, Taylor affirmed that she had given proper notice of probate to creditors as required by statute, including general notice through publication in a local newspaper of general circulation. See Wyo. Stat. Ann. § 2-7-201 (LexisNexis 2008). On April 24, 2001, the district court issued an order approving Taylor's final report and decrecing final distribution of the estate. Taylor was discharged as personal representative by court order on May 11, 2001.
[¶4] Stringari filed a Petition to Reopen Estate on July 9, 2002. Stringari claimed that although he was a reasonably ascertainable creditor of the estate and entitled to actual notice of probate by the personal representative, Taylor did not mail him notice of probate as required by Wyo. Stat. Aun. § 2-7-205(a)(ii). He asked the court to grant him relief pursuant to Wyo. Stat, Ann. § 2-7-7083(c)i) and (c)@ii) and reopen probate, allowing him to file a claim against the estate and commence discovery.
[¶5] Taylor responded with an objection that Stringari was not a reasonably ascertainable creditor. She requested a hearing to determine the validity of his claim. In his response to the objection, Stringari claimed that a hearing was premature and that in order for the process to have any meaning he was entitled to pursue discovery as specified in the Wyoming Rules of Civil Procedure. Stringari argued that discovery was necessary to establish what efforts the personal representative had made to ascertain the identity of the estate's creditors. In an affi *929 davit attached to her pretrial brief, Taylor replied that she recalled a conversation she had with her father in which he described an automobile accident he had been in as a "fender-bender," and that there were no injuries. Taylor also recalled seeing a broken headlight on her father's car at that time but she considered the incident, which took place about a year before her father's death, to be minor and had completely forgotten it until Stringari's claim was filed.
[T6] A hearing on Stringari's petition was held before the district court. The court denied the petition on the basis that: (1) Stringari had to make a serious showing of an entitlement to actual personal notice of the probate proceedings before the court would allow him to engage in discovery prior to a hearing under Wyo. Stat. Ann. § 2-7-703(c); (2) the fact that the personal representative had knowledge that the decedent had been involved in a "fender-bender" approximately one year before his death, was not sufficient for the court to conclude that the personal representative should have discovered that Stringari may have wanted to bring a claim against the estate; (8) Strin-gari was not a claimant whose identity was reasonably ascertainable by the personal representative and he was not entitled to actual notice of the probate proceedings; and (4) Stringari was the type of claimant for whom notice by publication of the probate proceedings in a newspaper of general cireulation in the county where the probate proceedings were located was appropriate.
[¶7] On appeal, Stringari challenges the court's denial of his petition to reopen the estate and his request for pre-hearing discovery.
DISCUSSION
[¶8] The Wyoming Probate Code provides a unified procedure that is to be liberally construed and applied to: promote the simplification and clarification of the law concerning the affairs of decedents and other protected persons; discover and effectuate the intent of a decedent in the distribution of his property; promote a speedy and efficient system for liquidating a decedent's estate and distributing it to his/her successors; and facilitate the use of certain trusts Wyo. Stat. Ann. § 2-1-102(a)(1) through (iv) (Lex-isNexis 2008). The district courts of the state have exclusive original jurisdiction over all matters relating to the probate and contest of wills and testaments, the granting of letters testamentary, and of administration, settlement, and distribution of a decedent's estate. Wyo. Stat. Ann. § 2-2-101 (Lexis-Nexis 2008). The district courts have the authority to appoint a fiduciary, including a personal representative, as an executor to administer the estate. Wyo. Stat. Ann. § 2-1-801(a)(xv) and (xvi); Wyo. Stat. Ann. §§ 2-3-101 et seq. (LexisNexis 2008).
[¶9] The probate code establishes the various procedures that must be completed in the administration of an estate. One such procedure relates to notifying creditors of the probate proceedings. Upon admission of a will to probate and the issuance of letters, if appointed, a personal representative is required to publish a notice of the admission of the will or estate to probate and of their appointment as personal representative once a week for three consecutive weeks in a daily or weekly newspaper of general circulation in the county in which the probate is pending. Wyo. Stat, Ann. § 2-7-201 (LexisNexis 2008). The notice is required to be substantially in the form set out in the statute and must include language informing creditors that any claims against the decedent must be filed with the necessary vouchers within three months from the date of the first publication of the notice or be forever barred. Id. A copy of the notice published in the newspaper must be mailed to each creditor of the decedent whose identity is "reasonably ascertainable by the personal representative within the time limited in the notice to creditors," not later than thirty days prior to the date three months after the first publication of the notice in the newspaper. Wyo. Stat. Ann. § 2-7-205(a)(ii) (LexisNexis 2003).
[¶10] The Wyoming Probate Code then requires a creditor to file any claims it may have against an estate with the clerk of court within the time limited in the notice to eredi-tors. Any claim not so filed is forever barred. Wyo. Stat. Ann. § 2-7-708(a) (Lex-isNexis 2008). The personal representative *930 is required to state in writing whether the creditor's claim is allowed or rejected. Wyo. Stat. Ann. § 2-7-712(a) (LexisNexis 2003). If a claim is rejected, in whole or in part, the personal representative must notify the ered-itor by certified mail. Wyo. Stat. Ann. § 2-T-712(d). A creditor whose claim has been rejected then has the option of bringing suit against the personal representative but must do so within thirty days of the date when the notice of rejection was mailed or the claim is forever barred. Wyo. Stat. Ann. § 27-718 (LexisNexis 2008).
[T11] After a personal representative has fully administered an estate by collecting all monies due, paying all debts and distributing all assets to the entitled parties, he may petition the probate court for a final discharge. Wyo. Stat. Ann. § 27-814 (Lexis-Nexis 2008). If the court is satisfied that the personal representative has fully performed all acts lawfully required of him, then it may issue a decree discharging him from all further liability. Id. Onee all known assets belonging to the estate have been fully administered and distributed, the court may enter an order closing the estate. Wyo. Stat. Ann. § 27-815 (LexisNexis 2008).
[T12] When an estate has been closed, the probate code allows for reopening in only two circumstances. The first allows for the reopening of an estate upon a showing of due cause for the purpose of administering after-discovered property or for the correction of the description of any property that was administered during the original probate.[1] Wyo. Stat. Ann. §§ 2-8-101, -102 and -1083 (LexisNexis 2008). The second cireum-stance, which is relevant to this case, applies to creditors' claims that were not timely filed with the clerk of court as required by Wyo. Stat. Ann. § 2-7-708(a) and are otherwise forever barred, as noted above. Subsection (c) of that statute provides:
(c) This section shall not bar:
(i) Claimants entitled to equitable relief due to peculiar cireumstances, if so found by the court in adversary proceedings; or
(ii) A claimant to whom no notice was mailed pursuant to W.S. 2-7-205(a)(i), if the court in adversary proceedings finds that the identity of the claimant was reasonably ascertainable by the personal representative within the time limited in the notice to creditors published pursuant to W.S. 2-7-201.
Our concern in this case is with subsection (c)), and we are called to interpret this statute.[2]
[1183] Statutory interpretation is a question of law.
We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an " "inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection! " Parker Land and Cattle Company v. Wyoming Game and Fish Commission, 845 P.2d 1040, 1042 (Wyo.1998) (quoting Rasmussen v. Baker, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia.
Wyodak Resources Dev. Corp. v. State Bd. of Equalization, 2001 WY 92, ¶ 7, 32 P.3d 1056, ¶ 7 (Wyo.2001) (quoting Exxon Corp. v. Board of County Comm'rs, 987 P.2d 158, 161-62 (Wyo.1999)).
*931 [¶ 14] In reviewing this statute, we begin by considering the phrase "adversary proceeding." On appeal, Stringari argues, as he did in the district court, that the phrase "adversary proceeding" contemplates an evi-dentiary-type hearing encompassing the application of the discovery rules set forth in the rules of civil procedure. Taylor counters by declaring, "once an estate has been closed there is no open proceeding in which the discovery provisions of the Wyoming Rule[s] of Civil Procedure apply."
[T 15] The phrase "adversary proceeding" is not defined in the probate code. In fact, the phrase itself does not appear anywhere else in the Wyoming statutes. The phrase, however, does have specific legal connotations:
Adversary proceeding. One having opposing parties; contested, as distinguished from an ex parte hearing or proceeding. One of which the party seeking relief has given legal notice to the other party, and afforded the latter an opportunity to contest it.
Black's Law Dictionary, p. 52 (6th ed.1990). We have used the phrase in our case law jurisprudence in different contexts to refer to hearing or trial like proceedings. See generally, Mogard v. City of Laramie, 2001 WY 88, ¶ 21, 32 P.3d 313, ¶ 21 (Wyo.2001) (Sixth Amendment right to counsel attaches at the time adversary judicial proceedings are initiated against a defendant); Billings v. State. Bd. of Outfitters & Guides, 2001 WY 81, ¶ 11, 30 P.3d 557, ¶ 11 (Wyo.2001) (disciplinary proceeding before a licensing board is an adversary proceeding); Joe Johnson Co. v. State Bd. of Control, 857 P.2d 312, 318 (Wyo.1993) (traditionally state has relied upon adversary proceedings between water users to address claims of abandonment); Diamond Hill Inv. Co. v. Shelden, 767 P.2d 1005, 1016 (Wyo.1989) (reference to adversary proceedings within bankruptcy context).
[T 16] The phrase "adversary proceeding" is used to connote a characteristic of legal proceedings of varying degrees of formality. It means that a proceeding is contested by opposing parties who have been provided with the appropriate legal notice and given an opportunity to present their case. All trials, for example, are adversary proceedings; but not all adversary proceedings are trials. The same could be said for hearings before a court or an administrative agency. The legislature's use of the phrase "adversary proceedings" is not, therefore, a reference to any one specific type of proceeding, but to a characteristic of a proceeding.
[T17] We think the legislature's intent behind the use of the phrase in § 2-7-703(c) is connected to the unique nature of an estate after probate has been closed. Upon discharge, a personal representative is relieved of all duties, rights, responsibilities, and liabilities and can no longer act as representative of the estate. 81 Am.Jur.2d Executors and Administrators § 309 (2002). Arguably, the personal representative would have no further interest in the status of the estate. Indeed, the estate itself ceases to exist as a legal entity once it has been fully probated and the personal representative has been discharged. Hawkeye Security Ins. Co. v. Porter, 95 F.R.D. 417, 419 (N.D.Ind.1982). By using the phrase "adversary proceeding," the legislature has indicated an intent to have any petition to reopen an estate under § 2-7-708(c) subject to a contested, as opposed to ex parte, proceeding.[3] The logical, if not only, person to assume that role is the former personal representative or administrator of the closed estate. Thus, the phrase "adversary proceeding" indicates the nature of the proceeding but is not a mandate for any particular type of proceeding.
[¶18] The question then becomes, what type of proceeding is contemplated for a petition to reopen an estate under Wyo. Stat. Ann. § 2-7-7083(c). Taylor contends that a petition to reopen an estate should be treated as equivalent to a motion for relief from judgment under W.R.C.P. 60(b), which requires a prima facie demonstration of success on the merits before the discovery provisions *932 of the rules of civil procedure are applied. We are persuaded by this argument. Thus, in order to be entitled to discovery, the petitioning party must first make a prima facie showing that he is entitled to reopen the estate.
[T19] In reaching this conclusion, we consider the nature of a final decree of distribution and an order closing an estate. Wyo. Stat. Ann. §§ 2-7-818 through -815 (Lexis-Nexis 2008) provide for the final distribution, the discharge of the personal representative, and the closing of the estate. The orders generated by this process represent the final orders of the probate proceedings. Although the probate statutes specifically provide for probate estates to be reopened under certain circumstances, the decree of distribution and the order closing the estate are final judgments. Indeed, the probate code provides that a decree -of distribution is a final judgment adjudicating title to the assets of the estate and the rights of beneficiaries and claimants. Wyo. Stat. Aun. § 2-2-101 (Lex-isNexis 2008). We have held, "the decree of distribution is final and res judicata if it is not appealed, regardless of any errors in the decree." Taylor v. Estate of Taylor, 719 P.2d 234, 238 (Wyo.1986). The final orders from a probate proceeding are therefore entitled to the same weight as a final judgment in any other civil proceeding.
[¶20] We also consider the nature of a motion to reopen a probate estate. The "law of reopening estates is derived from the law of vacating judgments." See Pitzer v. Union Bank of California, 141 Wash.2d 589, 9 P.3d 805, 812 (2000). Thus, a party seeking to reopen an estate is seeking relief from a final judgment. As such, it makes sense to treat the request to open a probate estate the same as other requests for relief from a judgment.
[¶21] Outside the probate code, W.R.C.P. 60(b) provides the means for a party to seek relief from a final judgment. Although this court has never considered the extent of discovery for motions seeking relief from final judgment, several federal courts have. It appears that these courts restrict the discovery the party seeking relief is allowed post judgment. These courts require a prima facie demonstration of success on the merits before ordering discovery. See H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 586 F.2d 1115, 1118-19 (6th Cir1976); United States ex rel. Free v. Peters, 826 F.Supp. 1153, 1154-55 (N.D.Ill.1993); Valerio v. Boise Cascade Corp., 80 F.R.D. 626 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.1981).
[T22] In looking at the rationale from these courts, we find their analysis equally applicable to motions to reopen probate proceedings. A party seeking to reopen an estate similarly seeks relief from a final judgment but requests discovery to assist him in obtaining reconsideration of that final judgment. H.K. Porter involved an attempt to overturn a judgment on the basis of fraud. The party secking relief argued that the opposing party possessed documents that would support the request for relief and sought discovery on that basis. Even though a party seeking relief on the basis of fraud carries a heavy burden of proof, the court of appeals affirmed the decision denying the discovery request. In rendering its decision the court stated:
[Wle must recognize that a request for discovery for the purpose of attacking a final judgment involves considerations not present in pursuing discovery in a pending action prior to a judgment. Primary among these considerations is the public interest of the judiciary in protecting the finality of judgments.
H.K. Porter, at 1118. The court then held that in instances where post-judgment discovery is sought, it is within the trial court's discretion to require the moving party to make a showing in support of its allegations before requiring the prevailing party to submit to discovery. Id. at 1119. Because the party seeking relief failed to make a prima facie showing, the court ruled that there was no right to additional discovery. Id. at 1118-19.
[¶23] In Valerio, the United States District Court for the Northern District of California adopted the H.K. Porter reasoning. Valerio involved an attempt to set aside a class action settlement on the basis of fraud. Like the party seeking relief in H.K. Porter, the parties seeking relief in Valerio claimed *933 that they could corroborate their accusations if they were permitted discovery. In resolving the matter, the court adopted the rationale from H.K. Porter that the public interest in the finality of judgments places post-judgment discovery in a different category than pretrial discovery. The court then found that the plaintiffs had not made a prima facie demonstration of success on the merits and denied the request for discovery. Valerio, at 646-47. Interestingly, the court found the finality consideration "even more pressing in a class action context" where a large number of litigants would be affected by changes to the original decision. Id. at 647.
[¶24] The case now before us presents similar concerns for finality. Indeed, in probate matters there are multiple beneficiaries and creditors that may be affected by a change to the original probate decision. Although H.K. Porter and Valerio differ from the instant case because they concerned Rule 60 claims based on fraud, this distinction does not render the analysis inapplicable, because neither holding turned on the fraud issue.[4] See Goldy v. Beal, 91 F.R.D. 451, 455 (M.D.Pa.1981). Rather, H.K. Porter and Vai-erio stand for the proposition that post-judgment discovery is based on policies different than those considered in the period before trial. Id. Specifically, the policy of promoting the "finality" of judgments must be considered.
[¶25] The probate code specifies:
Exeept as otherwise provided in the Probate Code, the provisions of the Wyoming Rules of Civil Procedure are applicable to and constitute the rules of practice for all proceedings, new trials or appeals. In all proceedings the party affirming is contestant and the one denying or avoiding is contestee.
Wyo. Stat. Ann. § 2-2-3808 (LexisNexis 2008). The statute clearly and unambiguously requires the application of the rules of civil procedure unless the probate code provides otherwise. However, while the rules of civil procedure are applicable to probate proceedings, the rules governing discovery apply to the period of time between the pleadings and trial. See W.R.CP. 26-37. Post-judgment discovery involves considerations not present in discovery prior to a judgment. See H.K. Porter Co., at 1118. As can be seen by the text of the discovery rules, in the early stages of litigation the parties are permitted broad access to information held by the other side. This broad access exists even though compliance with discovery requests often creates considerable burdens on the responding party. The policy for this liberal attitude is the belief that both parties must be permitted to serutinize all relevant evidence so that each will have a fair opportunity to present its case at trial, and the flexible provisions contained in the rules serve this end. Goldy, at 454. Following a judgment, this discovery policy is not equally forceful in the sense that, once judgment is obtained, the party has had such an opportunity. Although a creditor, such as Stringari, did not participate in the prior proceedings, he had an opportunity to do so through the general publication notice.
[¶26] Furthermore, there is a strong interest in not disturbing the sanctity of a closed probate estate. Pitzer, at 811 (citing Little v. Smith, 943 S.W.2d 414, 417 (Tex.1997) ("the need for finality of probate proceedings is well recognized by this and other courts"); In re Williamson's Estate, 95 So.2d 244, 246 (Fla.1957) (it is "public policy ... that the estates of decedents shall be speedily and finally determined with dispatch"). In Reed v. Campbell, 476 U.S. 852, 855-56, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the United States Supreme Court noted the difference between the way an "open" probate and a "closed" probate should be treated: "After an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate." Because of these concerns, a court should be cautious before reaching *934 back in time to evaluate errors made during the administration of a closed probate estate. Pitzer, at 811.
[¶27] Nevertheless, while the interest of finality is of paramount concern, it is not absolute. Pitzer, at 811. Undoubtedly, this is why there are procedures for reopening probate estates. In the limited circumstances where probate can be reopened, the interest of finality must yield to other concerns. Id. at 811. One such concern is due process. The Due Process Clause of the United States Constitution requires the personal representative of an estate to provide actual notice of probate proceedings to known or reasonably ascertainable ereditors. Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 489-90, 108 S.Ct. 1340, 1347, 99 LEd.2d 565 (1988). The personal representative must make "reasonably diligent efforts" to uncover the identities of creditors. Id. (citing Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711, 77 LEd.2d 180 (1983). The "reasonably diligent efforts" required of a personal representative have been described as "due diligence to identify the decedent's potential creditors from all available sources at hand." Tulsa Professional Collection Services, Inc. v. Pope, 808 P.2d 640, 645-46 (Okla.1990). The concept of "due diligence" is not foreign to this court,. We have defined it as:
Such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular cireumstances; not measured by any absolute standard, but depending on the relative facts of the special case.
Pittman v. State ex rel. Worker's Compensation Div., 917 P.2d 614, 618 (Wyo.1996) (citing Black's Law Dictionary (6th ed.1990) and Olheiser v. State ex rel. Worker's Compensation Div., 866 P.2d 768, 773 (Wyo.1994)); see also Matter of Adoption of CAM, 861 P.2d 1102, 1105 (Wyo.1993). Accordingly, a creditor of an estate is entitled to personal notice of probate if the personal representative knows of the ereditor's identity or if, through due diligence based on the information available to the personal representative, the creditor's identity is reasonably ascertainable.[5]
[T28] We must then determine how these due process considerations coincide with the finality considerations in the form of a proceeding. As discussed above, the phrase "adversary proceeding" indicates the nature of the proceeding but is not a mandate for any particular type of proceeding. Given this conclusion, it appears a hearing to determine whether the petitioner can make a prima facie showing would qualify as an adversary proceeding. At the same time, such a hearing takes into consideration the due process concerns because it gives a creditor an opportunity to show that he was reasonably ascertainable.
[¶29] Indeed, the competing due process consideration leads us to disagree with the district court's conclusion that Stringari was required to make a "serious showing" before being entitled to discovery. In Valerio the court reasoned that, had the plaintiffs presented some evidence of their claim, the finality considerations might be sufficiently outweighed by the countervailing public interest in the integrity of the judicial process, to warrant further discovery. Valerio, at 647. Thus, the Valerio court embraced the idea of a prima facie showing, but not some higher standard. We similarly conclude that a prima facie showing, rather than a serious showing, is the correct standard because it represents the correct balance between the policy considerations of finality and due process.
*935 [T30] We therefore hold that it is within the district court's discretion to require the party seeking to reopen the estate to make a prima facie showing to support its allegations before requiring the personal representative to submit to discovery. As with Rule 60 motions, this decision to grant relief is a question that rests within the sound discretion of the district court. Vanasse v. Ramsay, 847 P.2d 993, 996 (Wyo.1998). However, because the district court applied a "serious showing" standard, which is a stricter standard than the prima facie standard we determine is applicable, we reverse and remand so that the petition may be considered under the appropriate standard. On remand, both the district court and the parties will be aware of the appropriate standard and will have the opportunity to conduct a hearing in conformity with that standard.
CONCLUSION
[¶31] As fully discussed above we reverse and remand the district court's order.

. In her brief, Taylor argues that appellant's Petition to Reopen the estate should be denied because he failed to demonstrate that he was a "person interested" in the estate, Wyo. Stat, Ann. § 2-8-102. However, these statutes clearly and unambiguously apply only to claims related to after-discovered property or for corrections of property descriptions. Neither scenario is present here, so these statutes are not applicable.

. The statute is structured so that a claimant can obtain a reopening of the estate if he can show either "peculiar circumstances" under subsection (c)) or if he can show that he was a reasonably ascertainable creditor who was not provided with the statutorily required notice under subsection (c)(ii). Appellant argued before the district court and in his appellate brief that he had demonstrated "peculiar circumstances" justifying relief under subsection (c)). However, the facts pled by appellant relate only to whether he was a reasonably ascertainable creditor. Accordingly, appellant's claim stands or falls on his ability to make the requisite showing under subsection (c)(ii), and we need not consider his claim under subsection (c)(i).

. Contrast this with a situation where a reopening of the estate affects a specific, identifiable property of an estate where a person or entity whose interest would be affected is readily ascertainable. Wyo. Stat. Ann. §§ 2-8-101 to -103. The legislature did not use the phrase "adverse proceeding" in those statutes.

. In Valerio the plaintiffs sought relief through a separate action rather than a Rule 60 motion. However, the two remedies are co-extensive. See Goldy v. Beal, 91 F.R.D. at 455 n. 8 (citing 11 Wright & Miller, Federal Practice and Procedure: Civil § 2868 (1973)).

. In her brief, Taylor suggests that a claim based on a personal injury is too speculative or contingent in nature to require personal notice. A personal injury claim is not a contingent claim any more than any number of other disputed creditor claims filed against an estate. Foster v. Cianci, 773 So.2d 1181, 1182 (Fla.App.2000). Indeed, Wyo. Stat. Aun. § 2-1-301(a)(ix) defines "debts" to include the liabilities of the decedent which survive, whether arising in contract, fort or otherwise. The standard for notifying creditors-known or reasonably ascertainable-is sufficiently narrow to limit the scope of potential claimants against an estate to which legal notice must be given to a reasonable degree. Taylor's argument is not persuasive in view of the statutes governing probate.