2015 WY 71

**ACCELERATED RECEIVABLE SOLUTIONS, Appellant (Plaintiff),**

v.

**Justin D. HAUF, Personal Representative of the Estate of Margaret A. Hauf, Deceased, Appellee (Plaintiff).**

No. S–14–0178.

Supreme Court of Wyoming.

May 15, 2015.

Representing Appellant: David W. Brostorm, Scottsbluff, NE.

Representing Appellee: Nathaniel S. Hibben, Torrington, WY.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

HILL, Justice.

[¶ 1]  Accelerated Receivable Solutions (ARS) filed a claim against the Estate of Margaret A. Hauf (Estate).  The Estate disallowed the claim and sent notice of the disallowance to ARS via certified mail.  The certified mailing was returned to the Estate unclaimed.  Months later, ARS learned of its disallowed claim and filed a complaint in district court objecting to the disallowance of its claim and seeking judgment on the claim.  The Estate moved to dismiss the complaint as untimely, and the district court granted that motion.  ARS appeals the dismissal, asserting both statutory and due process violations.  We affirm.

## ISSUES

[¶ 2]  ARS states the issues on appeal as follows:

1.  The personal representative failed to exercise due diligence in providing actual notice to a known creditor of the estate.
2.  The notice sent was constitutionally inadequate under the due process clause of the U.S. Constitution and the Wyoming Constitution, because the estate knew the creditor had not received it.

## FACTS

[¶ 3]  On April 17, 2012, a petition for probate of the Estate of Margaret A. Hauf (Estate) was filed in district court in Goshen County.  On July 26, 2013, the Estate issued Notices of Time for Filing Creditors Claims to known creditors, including ARS's predecessors in interest.  On August 26, 2013, ARS filed its Amended Creditor's Claim.

[¶ 4]  On September 13, 2013, the Estate rejected ARS's amended claim.  On that same day, the Estate filed the notice of rejection in district court and mailed the rejection notice to ARS via certified mail.  The notice mailed to ARS was returned to the Estate marked "Return to Sender," "Unclaimed," and "Unable to Forward."

[¶ 5]  On December 18, 2013, counsel for ARS telephoned the district court for an update on the status of the ARS claim and was informed that the Estate had filed a rejection of the claim on September 13th.  Counsel for ARS immediately contacted counsel for the Estate and was informed that the mailed notice had been returned unclaimed.  Counsel for ARS then requested a copy of the claim rejection and received that copy on December 24, 2013, via first class mail.  On January 7, 2014, counsel for ARS requested and received a faxed copy of the certified mailing.  Upon further investigation and inquiries to the post office, counsel for ARS learned on January 10, 2014, that the postal service had erroneously stamped the certified mailing unclaimed and returned it to the sender.

[¶ 6]  On February 18, 2014, ARS filed a complaint objecting to the rejection of its claim and seeking a judgment on that claim.  On March 5, 2014, the Estate filed a Rule 12(b)(6) motion to dismiss seeking dismissal on the ground that ARS's complaint was time barred. On that same date, the district court issued an order setting hearing, which scheduled a hearing on the Estate's motion to dismiss for April 4, 2014.

[¶ 7] On April 3, 2014, ARS filed its opposition to the motion to dismiss. ARS argued that the Estate's failure to strictly comply with the statutory notice requirements and its failure to provide ARS constitutionally adequate notice precluded the running of ARS's time to file its complaint. ARS attached to its response an affidavit from the postmaster at Scottsbluff, Nebraska. That affidavit stated that it appeared the return of the certified mailing unclaimed was the result of mishandling on the part of the postal service in that the postal service had not issued proper notices before returning the mailing unclaimed.

[¶ 8] On April 4, 2014, the district court held a hearing on the Estate's motion to dismiss. During that hearing, the court ruled that it would not convert the Estate's motion to a summary judgment motion and would not consider the postmaster affidavit attached to ARS's opposition. The court then ruled:

> Looking strictly at the pleadings the court has an allegation that the claim was rejected, that notice of the rejection was mailed by certified mail as required by the statute on September 13th, so that's the operative date to begin the time frame. And indeed the plaintiff didn't file a complaint within 30 days from that. Those are probably the only operative facts the court needs to decide this motion. And we have this additional issue of the notice was returned to sender unclaimed. And it sounds like [counsel for ARS] is asserting that, you know, the post office shouldn't have done that. That "They sent it back too quickly" or "They never put it in our mailbox" or something.
>
> The court finds that those are not defenses to this particular issue and so the court will grant the motion to dismiss. Maybe the plaintiff has to take this up with the post office. But anyway, the court will grant the motion to dismiss.

[¶ 9] On April 4, 2014, the district court entered an Order Dismissing with Prejudice. ARS timely filed a notice of appeal to this Court.

## STANDARD OF REVIEW

[¶ 10] This Court reviews dismissals pursuant to W.R.C.P. 12(b)(6) using the following standard of review:

> When reviewing W.R.C.P. 12(b)(6) motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain such a dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle him to relief.

*In re Estate of Scherer*, 2014 WY 129, ¶ 5, 336 P.3d 129, 131 (Wyo.2014) (quoting *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 8, 270 P.3d 644, 646 (Wyo.2012)).

[¶ 11] Constitutional questions present issues of law that we review *de novo*. *Circuit Court of Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 9, 332 P.3d 523, 527 (Wyo.2014) (citing *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 17, 275 P.3d 438, 447 (Wyo.2012)).

## DISCUSSION

[¶ 12] ARS offers two arguments in contending that the district court erred in dismissing the ARS complaint: 1) the Estate failed to comply with the probate code's notice provisions; and 2) the notice provided by the Estate did not comport with the requirements of due process. In addressing these issues, we are mindful of this Court's admonition regarding strict compliance with the probate code's notice provisions:

> We hold that, notice having not been given by *certified mail* as required, the thirty-day period did not begin to run and the action is not barred. We note the rule of law that, generally, actual notice is a sufficient substitute for notice by mail and that defects in complying with technicalities can be ignored when actual notice is proved. However, in this situation, the thirty-day period for filing of a claim is so short, that strict compliance with the requirements of notice by certified mail ought to be required. The statute is clear and precise. The notice of rejection by certified mail to the claimant is not burdensome.

There are some practical reasons for requiring notice of rejection by certified mail. One is more likely to pay close attention to a letter that is certified than one received by ordinary mail. In addition, certified mail avoids any question as to whether or when actual notice of rejection was received.

*Hanson v. Estate of Belden,* 668 P.2d 1331, 1332 (Wyo.1983).

[¶ 13] In the present case, it is clear from the face of ARS's complaint that the notice the Estate sent via certified mail was returned unclaimed. It is also clear that ARS received actual notice of the claim rejection on at least three occasions with the first notice being received on December 18, 2014. Because *Hanson* instructs that strict compliance with the probate code's notice provision is required to trigger the period for contesting the rejection of a claim and actual notice will not cure any such defect, the first question we must address is whether the Estate strictly complied with the statutory notice provision. We will then address ARS's due process argument, which is a question that is entirely separate and discrete from the statutory compliance question.

## A. *Statutory Notice Requirements*

[¶ 14] Wyo. Stat. Ann. § 2–7–712 governs the allowance and rejection of claims against an estate and the requirements for notice of a rejected claim. It provides:

(a) When a claim, accompanied by the affidavit required in W.S. 2–7–704, has been filed with the clerk, the personal representative shall allow or reject it and his allowance or rejection shall be in writing and filed with the clerk within thirty (30) days after the expiration of the time for filing claims.

(b) If the claim is filed with the clerk before the expiration of the time limited for the filing of claims, the same is filed in time though acted upon by the personal representative after the expiration of such time.

(c) Every claim allowed by the personal representative shall be ranked among the acknowledged debts of the estate to be paid in due course of administration.

(d) When a claim has been filed with the clerk and is rejected in whole or in part, ***the personal representative shall immediately upon rejection notify the claimant by certified mail.***

Wyo. Stat. Ann. § 2–7–712 (LexisNexis 2013) (emphasis added).

[¶ 15] To determine whether the Estate strictly complied with the Section 712 notice requirements, we must interpret those requirements in accordance with our rules of statutory interpretation:

In interpreting statutes, our primary consideration is to determine the legislature's intent. All statutes must be construed *in pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo.* We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark,* 2001 WY 78, ¶ 12, 30 P.3d 36, [41] (Wyo.2001); *Murphy v. State Canvassing Board,* 12 P.3d 677, 679 (Wyo. 2000). Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation. *Billis v. State,* 800 P.2d 401, 413 (Wyo.1990) (citing *McGuire v. McGuire,* 608 P.2d 1278, 1283 (Wyo.1980)).

*Aland v. Mead,* 2014 WY 83, ¶ 11, 327 P.3d 752, 758–59 (Wyo.2014) (quoting *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n,* 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo.2014)).

[¶ 16] We have also said that "[w]here legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo.2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)). This Court "will not add language or choose other words to change the meaning of a statute." *Adekale*, ¶ 13, 344 P.3d at 765 (citing *Stutzman v. Office of Wyo. State Eng'r*, 2006 WY 30, ¶¶ 14–16, 130 P.3d 470, 475 (Wyo.2006)).

[¶ 17] ARS argues that because Wyo. Stat. Ann. § 2–7–712(d) uses the term "notify" and requires the use of certified mail to accomplish notice, the statute implicitly requires an estate's personal representative to ensure that a creditor receives actual notice of a claim rejection. In so arguing, ARS asserts that section 712 requires both that the personal representative mail the claim rejection via certified mail and that the personal representative then use due diligence to ensure either actual receipt of the notice or to verify that a creditor's failure to claim the certified mailing was a knowing and informed decision to refuse the mailing. We find this argument unsupported by the statute's plain language, by its reading with related provisions, and by legislative intent.

[¶ 18] ARS first argues that § 2–7–712(d)'s use of the term "notify," by definition, means to provide actual notice. This argument reads much more than is warranted into the definition of "notify." The term "notify" means "[t]o inform (a person or group) in writing or by any method that is understood," or "[t]o give notice of; to make known." *Black's Law Dictionary* 1090 (7th ed. 1999). Given this definition, we cannot agree that the use of the term "notify" embodies a legislative intent or meaning that the personal representative ensure actual notice. The term "notify" means nothing more than to provide notice, and its use necessarily relies on the surrounding text to define the required type of notice and how that notice is to be given.

[¶ 19] Section 712 supplies that defining text by requiring that the notice be given via certified mail. This brings us to ARS's next argument, that the statutory requirement of notice by certified mail encompasses broader obligations of tracking and verifying either actual receipt or a claimant's informed refusal to accept or claim the mailing. In support of its argument, ARS cites to this Court's observations in *Hanson* regarding the advantages of notice by certified mail:

> There are some practical reasons for requiring notice of rejection by certified mail. One is more likely to pay close attention to a letter that is certified than one received by ordinary mail. In addition, certified mail avoids any question as to whether or when actual notice of rejection was received.

*Hanson*, 668 P.2d at 1332.

[¶ 20] Extrapolating from *Hanson*, ARS contends that because certified mail allows a sender to know whether or when actual notice of a claim rejection was received, section 712's use of this form of notice reflects a legislative intent to require the estate to ensure actual receipt of a claim rejection or an informed refusal of the mailing. We disagree.

[¶ 21] We recognize that the legislature's choice of certified mail as the means of providing notice of a rejected claim was likely motivated to a great degree by the reliability of certified mail and the objective of ensuring that the notice reach its intended recipient. *See Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 1714, 164 L.Ed.2d 415 (2006) (noting "Court's ample precedent condoning notice by mail"). We are unwilling, however, to read into that choice an implied requirement that an estate must go beyond issuing the certified mailing and investigate the reasons a mailing goes unclaimed. Given the acceptance of U.S. mail service as a means of effecting notice, we believe it just as likely that the need for such an investigation was neither anticipated nor considered.

[¶ 22] Additionally, while it is true as this Court observed in *Hanson* that an advantage of notice by certified mail is the ability to know whether and when actual notice was received, the tracking of that piece of information is not statutorily critical to our pro-

bate code's claims processing. Wyo. Stat. Ann. § 2–7–718 governs a claimant's time for filing suit following rejection of a claim, and that filing period is triggered not by the date notice is received but by the date on which the notice is mailed:

> When a claim is rejected and notice given as required, the holder shall bring suit in the proper court against the personal representative within thirty (30) days *after the date of mailing the notice,* otherwise the claim is forever barred.

Wyo. Stat. Ann. § 2–7–718 (LexisNexis 2013) (emphasis added).

[¶ 23] In this regard, notice by certified mailing provides information in addition to the date of delivery or attempted delivery that is arguably more relevant in terms of the probate code's claims processing, namely documentation of the mailing date. *See* United States Postal Service, Domestic Mail Manual § 503.3.1.1 (http://pe.usps.gov/text/dmm300/503.htm# 1063590) (emphasis added) ("Certified Mail *provides the sender with a mailing receipt* and, upon request, electronic verification that an article was delivered or that a delivery attempt was made."). Given that the mailing date of a rejection notice is the trigger for a claimant's filing period, we think it just as likely that the legislature, to the extent it prescribed certified mail as a means of tracking critical dates, was less concerned with the date of receipt and was more concerned that the method chosen would provide ready proof of the mailing date.

[¶ 24] We further find that it is difficult to reconcile the obligations urged by ARS with the policy objectives underlying the probate code. The legislature has expressly stated that the probate code is to be interpreted in keeping with "the policy of the state of Wyoming that the administration of estates of decedents be completed as rapidly as possible consistent with due protection of the interests of creditors, taxing authorities and distributees." Wyo. Stat. Ann. § 2–7–801(a) (LexisNexis 2013). This Court has likewise long recognized this goal in the administration of estates:

> The object of limitation statutes in estate matters is to expedite and facilitate the settlement of estates by providing a procedure whereby the executor or administrator of an estate can wind up the affairs of a decedent in an orderly manner and make distribution of assets as speedily as practicable.

*Park County ex rel. Park County Welfare Dept. v. Blackburn,* 394 P.2d 793, 795 (Wyo. 1964); *see also In re Estate of Novakovich,* 2004 WY 158, ¶ 26, 101 P.3d 931, 937 (Wyo. 2004); *Rodriguez v. Casey,* 2002 WY 111, ¶ 26, 50 P.3d 323, 330 (Wyo.2002); *Matter of Estate of Reed,* 768 P.2d 566, 572 (Wyo.1989).

[¶ 25] The obligations ARS urges this Court to read into § 2–7–712(d) are at odds with the goal of expedient estate administration. Ensuring actual receipt of a rejection notice or verifying the reasons for a claimant's failure to claim a certified mailing are requirements that in many instances are likely beyond a personal representative's control. There may be occasions where a postal mishandling is to blame for the delivery failure, but there may also be occasions where a claimant steadfastly refuses to claim the mailing or respond to a personal representative's inquiries. In any case, imposing an obligation on a personal representative to resolve the matter introduces uncertainty and delay into what is intended to be a predictable and efficient process.

[¶ 26] ARS's proposed interpretation of § 2–7–712(d) runs contrary to goals of estate administration and would require that this Court supply terms that are neither expressed nor implied in the statute, which is something we will not do. Section 712(d) requires that the personal representative send notice of a claim rejection via certified mail to the claimant, nothing more. Once that notice is sent, the personal representative has strictly complied with his statutory obligation, and the thirty-day time period for the claimant to file suit on the objection is triggered per § 2–7–718.

### B. Due Process Requirements

[¶ 27] We have determined that the Estate strictly complied with the statutory notice requirements. That brings us to ARS's second argument that even if the notice sent

by the Estate complied with the statutory notice requirements, that notice was constitutionally defective and violated ARS's right to due process under the Fourteenth Amendment to the U.S. Constitution.

[¶ 28] Before a government may take or impact property, "the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones*, 547 U.S at 223, 126 S.Ct. at 1712 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Due process protections are implicated where a protected property interest is impacted and where it is state action that impacts the protected property interest. *Tulsa Prof'l Collection Services, Inc. v. Pope*, 485 U.S. 478, 485, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988); *see also Hatfield v. Rochelle Coal Co.*, 813 P.2d 1308, 1310 (Wyo. 1991). We therefore must consider three questions in determining whether the barring of ARS's claim violated its due process rights: 1) whether ARS had a protected property interest in its claim against the Estate; 2) whether the rejection of that claim involved state action; and 3) whether ARS received adequate notice and an opportunity to be heard on the claim.

### 1. *Protected Property Interest*

[¶ 29] The parties here do not dispute that ARS's claim against the Estate is a protected property interest. *See Tulsa Prof'l Collection Services, Inc.*, 485 U.S. at 485, 108 S.Ct. at 1345 (claim against estate "properly considered a protected property interest"). ARS had a protected property interest in its claim against the Estate, and so we proceed to the next question of whether the rejection of that claim involved state action.

### 2. *State Action*

[¶ 30] The Supreme Court has defined the circumstances under which the barring of a claim against an estate involves state action. *Tulsa Prof'l Collection Services, Inc.*, 485 U.S. at 486–87, 108 S.Ct. at 1345–46. In *Tulsa Prof'l Collection Services, Inc.*, the Court considered whether a provision of Oklahoma's probate laws that required claims to be presented to the estate within two months of the publication of a notice advising creditors of the commencement of probate proceedings complied with due process. *Tulsa Prof'l Collection Services, Inc.*, 485 U.S. at 479, 108 S.Ct. at 1342. In finding that notice by publication was inadequate, the Court determined that the barring of the affected claims involved state action. It reasoned:

It is true that nonclaim statutes generally possess some attributes of statutes of limitations. They provide a specific time period within which particular types of claims must be filed and they bar claims presented after expiration of that deadline. Many of the state court decisions upholding nonclaim statutes against due process challenges have relied upon these features and concluded that they are properly viewed as statutes of limitations. *See, e.g., Estate of Busch v. Ferrell–Duncan Clinic, Inc.*, 700 S.W.2d at 89 [Mo.1985]; *William B. Tanner Co. v. Estate of Fessler*, 100 Wis.2d 437, 302 N.W.2d 414 (1981).

As we noted in [*Texaco, Inc. v.*] *Short*, however, it is the "self-executing feature" of a statute of limitations that makes *Mullane* and *Mennonite* inapposite. *See* 454 U.S. [516] at 533, 536, 102 S.Ct. [781] at 794, 796 [70 L.Ed.2d 738 (1982)]. The State's interest in a self-executing statute of limitations is in providing repose for potential defendants and in avoiding stale claims. The State has no role to play beyond enactment of the limitations period. While this enactment obviously is state action, the State's limited involvement in the running of the time period generally falls short of constituting the type of state action required to implicate the protections of the Due Process Clause.

Here, in contrast, there is significant state action. The probate court is intimately involved throughout, and without that involvement the time bar is never activated. The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. The court must appoint the executor or executrix before

notice, which triggers the time bar, can be given. Only after this court appointment is made does the statute provide for any notice; § 331 directs the executor or executrix to publish notice "immediately" after appointment. Indeed, in this case, the District Court reinforced the statutory command with an order expressly requiring appellee to "immediately give notice to creditors." The form of the order indicates that such orders are routine. Record 14. Finally, copies of the notice and an affidavit of publication must be filed with the court. § 332. It is only after all of these actions take place that the time period begins to run, and in every one of these actions, the court is intimately involved. This involvement is so pervasive and substantial that it must be considered state action subject to the restrictions of the Fourteenth Amendment.

*Tulsa Prof'l Collection Services, Inc.*, 485 U.S. at 486–87, 108 S.Ct. at 1345–46.

[¶ 31] Shortly after the Supreme Court decided *Tulsa Prof'l Collection Services, Inc.*, this Court was presented with the same question whether the barring of claims against an estate for failure to timely file a claim against an estate under Wyoming's probate code involved state action. We held that it did, explaining:

The Supreme Court also held that Oklahoma's statute implicated sufficient state action to invoke the due process clause of the fourteenth amendment. The Supreme Court based that conclusion on the following statutory characteristics: (1) the non-claim statute became operative after probate proceedings had been commenced in state court; (2) the time bar could be triggered only after a court had appointed an executor or executrix; (3) the statute directed the executor or executrix to publish notice immediately after court appointment; and (4) the statute required the executor or executrix to file copies of the notice and an affidavit of publication with the court. The Supreme Court stated that such substantial involvement of the probate court in the probate procedure constituted state action.

Next, the Supreme Court balanced the state's legitimate interest in expeditious resolution of probate proceedings and the creditors' interest in protection of their claims. The Supreme Court determined that providing actual notice to known or reasonably ascertainable creditors was not inconsistent with the goals of the statute and was not unreasonably cumbersome.

The statutory procedure in Wyoming is quite similar to Oklahoma's scheme in that the time bar provided in § 2–7–201 is triggered only after probate proceedings have been commenced in district court, a personal representative has been appointed by the district court, and notice has been given to creditors to file their claims against the estate with the clerk of court. In addition, proof of publication and mailing or delivery of the notice is required to be filed with the clerk of court. We hold that the involvement of the district court in the probate proceedings is so pervasive and substantial that it must be considered such state action as to invoke the due process clause of the United States and Wyoming Constitutions.

*Hanesworth v. Johnke*, 783 P.2d 173, 175–76 (Wyo.1989) (footnote omitted).

[¶ 32] The Estate contends that *Hanesworth* is distinguishable because in that case the Court was considering the initial notice of claims whereas in this case the probate case had advanced to the stage of claim rejection, which is a decision solely of the personal representative, made independently of the probate court and involving no action of the court. The Estate argues that because it is an action of the personal representative that triggers the limitations period rather than court action, the claims period is a self-executing statute of limitations that involves no state action. Given the Supreme Court's reasoning in *Tulsa Prof'l Services, Inc.* and our parallel reasoning in *Hanesworth*, we are unable to discern the difference urged by the Estate.

[¶ 33] At both junctures, the barring of a claim for failure to timely file a claim against an estate and the barring of a claim for failure to timely file a complaint following a claim's rejection, the factors that

this Court found constituted the probate court's "pervasive and substantial" involvement in the probate proceedings remain the same: probate proceedings have been commenced in district court, a personal representative has been appointed by the district court, and notice has been given to creditors to file their claims against the estate with the clerk of court. *See Hanesworth,* 783 P.2d at 176. The probate court's involvement in the probate proceedings does not end after a claim is filed against an estate, and while the personal representative may decide initially which claims to allow and which to reject, the estate is required to file its rejection of any claim with the court. Wyo. Stat. Ann. § 2–7–712(a). The probate court's role in the administration of an estate is not diminished by actions of the personal representative, and as we recently recognized, the probate court's role is significant:

> Our system of justice is generally adversarial in nature, and procedural errors tend to be soon discovered due to the parties' enlightened self-interests. Probate administration, on the other hand, is often not adversarial, and the probate court therefore has a significant role in assuring that the decedent's intent or the requirements of our statute of descent and distribution are carried out efficiently, honestly, and with appropriate notice.

*Estate of Dahlke ex rel. Jubie v. Dahlke,* 2014 WY 29, ¶ 79, 319 P.3d 116, 134 (Wyo. 2014).

[¶ 34] We find no reason to depart from our holding in *Hanesworth.* We thus conclude that the rejection of the ARS claim involved state action and turn to the final question whether ARS was afforded adequate notice and an opportunity to be heard on the rejection of its claim against the Estate.

### 3. *Adequacy of Notice and Opportunity to Be Heard*

[¶ 35] Due process does not require that a property owner receive actual notice before the government takes or impacts a protected property interest. *Jones,* 547 U.S at 226, 126 S.Ct. at 1713 (citing *Dusenbery v. United States,* 534 U.S. 161, 170, 122 S.Ct.

694, 151 L.Ed.2d 597 (2002)). The notice that is mandated by due process is " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Jones,* 547 U.S. at 226, 126 S.Ct. at 1713–14 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

[¶ 36] It is clear that the certified mailing to ARS was not constitutionally adequate notice. The Supreme Court has held that where notice is sent via certified mail and that mailing is returned unclaimed, the certified mailing will not satisfy due process requirements. *Jones,* 547 U.S. at 225, 126 S.Ct. at 1714. In so holding, the Court recognized that certified mailing generally is notice reasonably calculated to reach its intended recipient and is therefore generally constitutionally adequate. *Id.,* 547 U.S. at 227, 126 S.Ct. at 1714. The Court explained, however, consistent with its past precedent, that where the governmental entity has knowledge that notice pursuant to its normal procedure was ineffective and did not reach its intended recipient, that knowledge "trigger[s] an obligation on the government's part to take additional steps to effect notice." *Id.,* 547 U.S. at 230, 126 S.Ct. at 1714 (citing *Covey v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956); *Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (*per curiam* )).

[¶ 37] The Court in *Jones* did not require that the follow-up notice be in the same form as the failed notice or that it be in the statutorily-prescribed form. *Jones,* 547 U.S. at 234–35, 126 S.Ct. at 1718–19. The Court suggested that reasonable additional steps at notice would include re-sending the notice via regular mail or posting a notice at the recipient's provided address. *Id.* Notably, the Court rejected the argument that the government had an obligation to track down the intended recipient:

> Jones believes that the Commissioner should have searched for his new address in the Little Rock phonebook and other government records such as income tax rolls. We do not believe the government

was required to go this far. As the Commissioner points out, the return of Jones' mail marked "unclaimed" did not necessarily mean that 717 North Bryan Street was an incorrect address; it merely informed the Commissioner that no one appeared to sign for the mail before the designated date on which it would be returned to the sender. An open-ended search for a new address—especially when the State obligates the taxpayer to keep his address updated with the tax collector, see Ark. Code Ann. § 26–35–705 (1997)—imposes burdens on the State significantly greater than the several relatively easy options outlined above.

*Jones,* 547 U.S. at 235–36, 126 S.Ct. at 1719.

[¶ 38] The Estate acknowledges that, in light of *Jones,* the notice it sent via certified mail was not constitutionally adequate notice of its rejection of the ARS claim. The question we must answer then is whether ARS's subsequent receipt of actual notice of that claim rejection provided it the constitutionally required notice and opportunity to be heard.

[¶ 39] ARS argues that the actual notice that it received was not adequate because it was not provided via the statutorily-mandated method of certified mail. ARS further contends that it did not have an opportunity to be heard because the statutory period under § 2–7–718 for contesting the rejection could not be triggered until ARS received actual notice by certified mail. This argument improperly conflates the due process requirements and the statutory requirements.

[¶ 40] As we discussed above, it is the statute that requires notice via certified mail, not due process. *See Jones,* 547 U.S. at 238, 126 S.Ct. at 1721 (where notice by certified mail or other statutory method fails, due process does not prescribe the replacement method of providing notice). We have already held herein that the Estate strictly complied with the notice requirements of § 2–7–712(d) when it sent notice to ARS by certified mail. While that notice sent by certified mail was not adequate to afford ARS its constitutionally protected right to notice and an opportunity to be heard, it was

sufficient to trigger the Section 718 time period for contesting the claim. What we must determine then is how to cure the constitutional defect.

[¶ 41] The remedy that ARS urges, which demands that the constitutionally adequate notice must also be the statutorily-prescribed notice, would impose an untenable burden on an estate. The requirement would leave an estate with no ability to proceed on a claim if the claimant refused to accept a certified mailing. Even if the estate provided actual notice of the claim rejection, the matter would be at a standstill until such time as the claimant accepted the certified mailing. Due process does not dictate such a result.

[¶ 42] Instead, what we find best addresses the constitutional defect is a tolling of the § 2–7–718 time period until such time as constitutionally adequate notice is provided. This result is consistent with our interpretation of the probate code's notice requirements and with the demands of due process. We also find support for this result in a similar case recently decided by the Arizona Court of Appeals. *See In re Estate of Snure,* 234 Ariz. 203, ¶¶ 12–13, 320 P.3d 316, 319 (Ariz.Ct.App.2014).

[¶ 43] In *Snure,* as in this case, an estate sent notice of a claim disallowance via certified mail and that mailing was returned unclaimed. *Snure,* ¶ 3, 320 P.3d at 317. When the claimant received actual notice of the disallowance, she filed a petition objecting to the disallowance. *Id.,* ¶ 4, at 317. The court in *Snure* found, as we have, that while the certified mailing complied with the statutory notice requirement, the notice was constitutionally inadequate. *Id.,* ¶¶ 10, 12, 320 P.3d at 319. The court concluded that the estate complied with the statute when it mailed the notice and that the claimant "should be provided precisely what due process guarantees—notice and an opportunity to be heard." *Id.,* ¶ 13, 320 P.3d at 319. As a remedy, the court held that the time for the claimant to file her petition was the statutorily-prescribed period, but it did not begin to run until the date the claimant was provided constitutionally adequate notice. *Id.*

[¶ 44] Based on the foregoing, we conclude that the Estate complied with the notice requirements of § 2–7–712(b) when it mailed the notice of claim rejection to ARS and that compliance triggered the § 2–7–718 time for ARS to file its complaint. The running of that time was, however, tolled until ARS received constitutionally adequate notice of the claim rejection. We know that ARS first learned of the Estate's rejection of its claim when it telephoned the district court on December 18, 2013. It thereafter received a copy of the rejection notice via first class mail on December 24, 2013, and a faxed copy of the certified mailing on January 7, 2014. Measured from any of the three dates on which ARS received actual notice, its complaint, which was filed on February 18, 2014, was outside the thirty-day period prescribed by § 2–7–718. The complaint was therefore not timely filed and was properly dismissed.

### CONCLUSION

[¶ 45] We hold: When an estate sends notice of a claim rejection via certified mail, it has strictly complied with the requirements of § 2–7–712(d), even if that mailing is returned unclaimed. Because the certified mailing effects strict compliance with the section 712(d) notice requirement, § 2–7–718 thirty-day period for contesting the rejection is triggered. The running of that time will be tolled, however, until such time as constitutionally adequate notice is provided to the claimant.

[¶ 46] Because the Estate strictly complied with the statutory notice requirements in rejecting ARS's claim and ARS failed to timely file its complaint after receiving constitutionally adequate notice of the Estate's claim rejection, we find no error in the district court's dismissal of ARS's complaint against the Estate. Affirmed.