2017 WY 121

**LON V. SMITH FOUNDATION, a California non-profit corporation, Appellant (Plaintiff),**

v.

**DEVON ENERGY CORPORATION, an Oklahoma corporation; Devon Energy Production Company L.P., an Oklahoma limited partnership; and Andrew Kean, as Trustee of the Marguerite Brown Smith Trust, a California testamentary trust, Appellees (Defendants).**

Devon Energy Corporation, an Oklahoma corporation; and Devon Energy Production Company L.P., an Oklahoma limited partnership, Appellants (Defendants),

v.

Lon V. Smith Foundation, a California non-profit corporation, Appellee (Plaintiff).

Lon V. Smith Foundation, a California non-profit corporation, Appellant, (Plaintiff),

v.

Devon Energy Corporation, an Oklahoma corporation; and Devon Energy Production Company L.P., an Oklahoma limited partnership, Appellees, (Defendants).

S-17-0021
S-17-0022
S-17-0023

Supreme Court of Wyoming.

October 10, 2017

Rehearing Denied November 7, 2017

Representing Lon V. Smith Foundation: Kristopher C. Koski, Thomas N. Long, and Rebecca J. Zisch of Long Reimer Winegar Beppler LLP, Cheyenne, Wyoming; Drake D. Hill, Hill Law Firm, LLC, Cheyenne, Wyoming. Argument by Messrs. Koski and Long.

Representing Devon Energy Corporation and Devon Energy Production Company: Jeffery J. Oven, Clayton H. Gregersen, and Victoria A. Marquis of Crowley Fleck PLLP, Billings, Montana. Argument by Mr. Oven.

Representing Andrew Kean: Brett M. Godfrey and Anne E. Zellner of Godfrey Johnson, P.C., Englewood, Colorado. Argument by Mr. Godfrey.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] Thirty-four years ago, a California court issued a probate order distributing the estate of Lon V. Smith. A couple of years later, a Wyoming court entered an ancillary probate order to distribute Mr. Smith's Wyoming property, including the Carbon County overriding royalty interest (ORRI) that is the subject of this dispute. It is undisputed that Mr. Smith's intent, as expressed in his will (Will), was for the ORRI to be distributed to his wife, Marguerite B. Smith, for her life, and then to be distributed to the Lon V. Smith Foundation (Foundation). That is not, however, what the courts ordered in the California and Wyoming probates.

[¶2] The Foundation sued Devon Energy Corporation and Devon Energy Production Company L.P. (collectively, Devon) and the Marguerite Brown Smith Trust (Trust), claiming the ORRI payments should have been made to the Foundation. The district court found that, regardless of Mr. Smith's intent, the probate orders governed, and they distributed the ORRI to Mrs. Smith under the Will's residuary clause. The district court granted summary judgment to Devon and the Trust (the beneficiary under

Mrs. Smith's will), ruling that the Trust owned the ORRI, not the Foundation. The district court also denied requests from both the Foundation and Devon for attorney fees and costs pursuant to the Wyoming Royalty Payment Act's (WRPA) fee provision. The Foundation appeals, challenging the district court's interpretation of the probate orders and its conclusion that they govern over the terms of the Will, and the ruling on attorney fees. Devon appeals the denial of attorney fees. We affirm.

### ISSUES

[¶3] We restate the issues as follows:

1. Did the district court correctly determine as a matter of law that the 1983 California probate order and the 1985 Wyoming ancillary probate order govern, and that the Trust is the owner of the ORRI at issue?

2. Did the district court properly dismiss the Foundation's claim that Devon violated Wyo. Stat. Ann. § 30-5-302 when it is undisputed that Devon held ORRI proceeds in Devon's own "suspense account" and not in an interest-bearing account in a Wyoming financial institution?

3. Is either party entitled to attorney fees under the WRPA?

### FACTS

*The parties*

[¶4] The Foundation is a charitable foundation organized under the California Nonprofit Public Benefit Corporation Law. It operates for charitable and educational purposes and "provides grants for a number of causes, including health organizations, medical research, and youth organizations." The Foundation was created by Mr. Smith and is a named beneficiary under his Will.

[¶5] The Trust is a California testamentary trust that was created pursuant to the will of Marguerite Brown Smith, the wife of Mr. Smith. The Trust is a beneficiary under Mrs. Smith's will. At times, Trust management has overlapped with that of the Foundation,

however, there is no overlap between the Foundation and Trust beneficiaries.

[¶6] Devon is an oil and gas producer headquartered in Oklahoma City, Oklahoma. Devon was the lessee and operator of the oil and gas lease at issue in this case between 1982 and December of 2014. Devon sold its interest to Linn Operating, Inc. (Linn), effective April 1, 2014.

### Lon V. Smith's Will and the California Probate Order

[¶7] The facts in this case are undisputed. In 1973, Mr. Smith obtained a federal BLM oil and gas lease in Carbon County, Wyoming, and in 1974 he assigned the lease to J.D. Simmons, Inc., reserving a 5% ORRI. Mr. Smith died on June 5, 1979.

[¶8] Mr. Smith's Will provided that all of his oil and gas interests, including the ORRI, are to be transferred to his wife as a life estate, and then to the Foundation upon her death. Mr. Smith's estate was probated in California, and on April 6, 1983, the California court entered its Order Settling First and Final Report, Petition for Statutory Attorney's Fee and Extraordinary Attorney's Fee and Petition for Distribution Upon Waiver of Accounting (the California probate order). The California probate order distributes oil and gas interests as follows:

B) To Marguerite B. Smith a Life Estate in and to all mineral interests, oil and gas leases and properties, royalties, rentals, contracts, covering or affecting properties of the said Estate wherever situated together with all income of every sort thereon during her lifetime, the remainder interest therein, after the death of Marguerite B. Smith, to vest in and be distributed to Lon V. Smith Foundation, all as described as follows:

The next 94 pages of the California probate order describe oil and gas and mineral interests owned by Mr. Smith, but do not include the Wyoming ORRI. The order then goes on to state that after the Marguerite B. Smith life estate, the listed oil and gas interests are to pass to the Foundation:

E) To Lon V. Smith Foundation, a non-profit California corporation, the remainder interest after the death of said Marguerite B. Smith, in and to all mineral interests, oil and/or gas leases, properties, royalties, rentals and contracts, all as more particularly described in Pages 11 through 105 of this Order.

Again, the Wyoming ORRI is not included in the inventory of the California probate order. The California probate order also provides:

F) To Marguerite B. Smith all the rest, residue and remainder of said Estate, both real and personal, and wherever situated, together with the income thereon received after date of distribution of said Estate, whether described herein or not.

G) That all other and after-discovered property which may be found to belong to said Estate be distributed in accordance with decedent's said Last Will to the said Marguerite B. Smith.

[¶9] The parties do not dispute that the terms of Mr. Smith's Will provided that the ORRI, along with all of Mr. Smith's other oil and gas interests, would be transferred to his wife, Mrs. Smith, as a life estate, with the remainder interest to the Foundation. They also do not dispute that the California probate order specifically listed each of the oil and gas interests to be passed to Mrs. Smith as life estates and that the ORRI was not included on that list. Finally, they do not dispute that the California probate order also indicated that the remainder interest in *only* the listed oil and gas interests that passed to Mrs. Smith as life estates, was to pass to the Foundation upon her death. Thus, the California probate order did not distribute the ORRI in accordance with the Will.

[¶10] The Wyoming ancillary probate order distributing Mr. Smith's Wyoming property ordered that the California probate order be "admitted to this Court and [ ] be considered and treated as original proceedings of this Court and as conclusive evidence of the facts therein shown." Thus, the Wyoming probate order, recorded in Carbon County in March of 1985, also omitted any specific reference to the Wyoming ORRI.

[¶11] Over the years, the parties have taken differing positions regarding who is entitled to payments of Lon V. Smith's ORRI. It is undisputed that Devon has made payments to both the Trust and the Foundation at different times and with respect to different wells covered by the ORRI.[1] In July of 2014, Devon sent a letter to the Trust, copying the Foundation, which explained its position at that time that the Foundation and not the Trust was entitled to royalty payments on certain wells:

> The [Trust] received $747,273.07 during the period from 12/15/2004 through 11/15/2011 in connection with the ORRI on the Standard Draw Wells. As explained below, the Trust was not entitled to these funds, and Devon requests that the Trust immediately repay these funds to Devon so that they may be credited to the proper owner.

The Trust did not repay the allegedly erroneous royalty payments to Devon, and soon thereafter the Foundation brought this lawsuit against Devon, its successor, Linn, and the Trust, claiming that under the terms of the Will, it is entitled to the ORRI payments.

[¶12] The Foundation sought to recover royalty payments that Devon made to the Trust, an accounting, recovery of statutory assessments for the improper reporting and retaining of oil and gas proceeds, and damages for conversion of royalty proceeds.[2] Additionally, the Foundation sought a constructive trust for the royalty payments received by the Trust. Devon asserted counterclaims against the Foundation and cross-claims against the Trust, seeking declaratory judgment on the ownership of the ORRI and seeking indemnification by the Trust. Devon contended that payments on the ORRI are governed by the California probate order, which was adopted in Wyoming in the ancillary probate proceeding, and that the Trust, not the Foundation, is entitled to royalty payments. The Trust has indicated that it is not adverse to the Foundation's position that the Foundation is the owner of the ORRI, but that it does not believe it owes the Foundation any royalty payments that Devon wrongfully paid the Trust in the past.

[¶13] Both the Foundation and Devon filed motions for summary judgment. The district court held that the ORRI passed to the Trust and that the Foundation was not "entitled to receive royalty payments in question." Consequently, the Foundation's other claims failed as well. The Foundation and Devon sought recovery of attorney fees and costs, both claiming they were the prevailing party entitled to fees under the WRPA, Wyo. Stat. Ann. § 30-5-303 (LexisNexis 2017). The district court concluded that the WRPA was inapplicable and neither party was entitled to an award of attorney fees.

[¶14] The parties filed several appeals which have been consolidated for review. The Foundation contends that the district court erred when it concluded that the ORRI belongs to the Trust, when it granted summary judgment on the Foundation's statutory claims, and when it denied the Foundation's request for attorney fees. Devon appeals the district court's denial of its motion for attorney fees. Additional facts will be discussed as they become relevant to the issues addressed below.

## STANDARD OF REVIEW

[¶15] Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(a). This Court considers the record from

---

1. The parties have spent considerable time and brief space to explain the various payments made at various times on various wells and to highlight letters and memoranda, division orders, and emails regarding royalty payments that Devon made to both the Trust and the Foundation. These facts are not dispositive of the issues before the Court and thus we refrain from discussing them at length here. *See Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.*, 612 P.2d 463, 466 (Wyo. 1980) (If a contract is unambiguous, we do not look to extrinsic evidence in interpreting its terms.).

2. Multiple wells were drilled on the lease at differing times and not all of the royalty payments on those wells are at issue. The Foundation argues that Devon owes royalty payments on four wells: Standard Draw 4-8-18-93, completed in 2000; Standard Draw 16-8-18-93, completed in 2005; Standard Draw 6-8-18-93, completed in 2004; and Champlin 261 G-6, completed in 2007.

the viewpoint most favorable to the party opposing the motion, and gives all favorable inferences to be drawn from the facts contained in materials appearing in the record to the opposing party. *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 20, 226 P.3d 889, 905 (Wyo. 2010) (*Ultra I*).

[¶16] We review the grant of summary judgment de novo, using the same materials and following the same standards as the district court. *P & N Invs., LLC v. Frontier Mall Assocs., LP*, 2017 WY 62, ¶ 8, 395 P.3d 1101, 1104 (Wyo. 2017); *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 12, 327 P.3d 732, 737 (Wyo. 2014). "We do not accord deference to the district court's decisions on issues of law." *Ultra I*, 2010 WY 36, ¶ 20, 226 P.3d at 905 (citations omitted).

## DISCUSSION

*I. Did the district court correctly determine as a matter of law that the 1983 California probate order and the 1985 Wyoming ancillary probate order govern, and that the Trust is the owner of the ORRI at issue?*

[¶17] In its order on the parties' cross-motions for summary judgment, the district court concluded:

> The 1985 Wyoming ancillary probate order, adopting and enforcing the 1983 California probate order, did not distribute the ORRI at issue here to Marguerite B. Smith as a life estate because this ORRI was not included in the 94 pages of described real property interests. Not being expressly dealt with in the decree of distribution, this ORRI falls into the residuary clause and passed "to Marguerite B. Smith," resulting in a fee simple conveyance.

Thus, the district court held that when Mrs. Smith died, the interest passed to the Trust, where it remains.

[¶18] The Foundation asserts numerous arguments in support of its main contention that the district court erred when it concluded that the Foundation is not the owner of the ORRI and is not legally entitled to the ORRI proceeds from Devon and its successors.

### Testator's Intent

[¶19] The Foundation argues that the district court's conclusion is erroneous because both Wyoming and California law require the examination of the testator's intent and that intent was expressed in Mr. Smith's Will. We agree that Mr. Smith's intent as set forth in his Will was that Mrs. Smith was to receive a life estate in the ORRI, and that after she died, it was to go to the Foundation. We also agree that as a general proposition, one of the policies underpinning the probate code is the discovery and effectuation of the testator's intent. *See* Wyo. Stat. Ann. § 2-1-102(a)(ii) (LexisNexis 2017). However, the time for evaluating the intent of the testator is during probate. In this case, probate occurred in California in 1983. The intent of Mr. Smith was not re-examined by the court in Wyoming because the California probate order was adopted pursuant to Wyo. Stat. Ann. § 2-11-201. Had the executor desired full probate to occur in Wyoming, it could have sought Wyoming probate under Wyo. Stat. Ann. § 2-11-104,[3] but it did not do so.

[¶20] When a decree is issued, it supersedes the will and controls the distribution. *In re Estate of Novakovich*, 2004 WY 158, ¶ 19, 101 P.3d 931, 936 (Wyo. 2004); *Estate of Blaney*, 607 P.2d 354, 358 (Wyo. 1980). Once there is a valid decree of distribution, the decree is final as to the title of the assets in the estate. *In re Estate of Novakovich*, 2004 WY 158, ¶ 19, 101 P.3d at 936; Wyo. Stat. Ann. § 2-2-101 (LexisNexis 2017). Further, a decree of distribution is considered a final order. *Estate of Blaney*, 607 P.2d at 358 ("[A] decree of distribution is final and conclusive as to who acquired title to property of decedent …."). The same holds true in California. *In re Estate of Callnon*, 70 Cal.2d 150, 74 Cal.Rptr. 250, 449

---

3. Wyo. Stat. Ann. § 2-11-201 (LexisNexis 2017) provides for an abbreviated probate proceeding. *See infra* ¶¶ 24-26. Wyo. Stat. Ann. § 2-11-104 (LexisNexis 2017) allows full probate in Wyoming courts of a will that has been proven in another jurisdiction.

P.2d 186, 191-92 (1969). "If the decree erroneously interprets the intention of the testator it must be attacked by appeal and not collaterally." *Id.*, 74 Cal.Rptr. 250, 449 P.2d at 191 (citations omitted); *see also Estate of Dahlke ex. rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 38-42, 319 P.3d 116, 126-27 (Wyo. 2014). "It is well settled that 'where the decree of distribution is contrary to the provisions in the will, the decree controls and prevails over the terms of the will with respect to the distribution of the property.'" *In re Estate of Callnon*, 74 Cal.Rptr. 250, 449 P.2d at 191 (citations omitted); *see also In Estate of Kimball*, 583 P.2d 1274, 1278 (Wyo. 1978) ("[A] decree of distribution, even though erroneous, becomes final and res judicata in the absence of an appeal or any other timely challenge to the settlement and distribution decreed thereby.").

[¶21] The Foundation asks this Court to disregard this precedent and contends that the order "must and easily can be construed as being made in accordance with the terms of the Will itself." The Foundation relies on this Court's statement in *In Estate of Kimball*, 583 P.2d at 1278, that "[t]here is a rule making it proper, if the decree refers to the will, that the will must be considered and the terms must govern." Our review of that case reveals that the statement relied upon by the Foundation is dicta. A single reference to a will in a probate decree does not necessarily incorporate the will into the decree. [4] *See, e.g., In re Estate of Herold*, 162 Cal.App.4th 983, 76 Cal.Rptr.3d 546, 550, 553-54 (2008). The Court in *In Estate of Kimball* allowed the correction of a clerical error which affected the distribution in the probate action. 583 P.2d at 1278-79. By contrast, here the Foundation is making a collateral attack on the California probate decree, which was adopted by the Wyoming court.

[¶22] The Wyoming Probate Code incorporates another important policy of "[p]romot[ing] a speedy and efficient system for liquidating the estate of the decedent and making distributions to his successors." Wyo.

Stat. Ann. § 2-1-102(a)(iii) (LexisNexis 2017). Regarding the interest in finality, we have stated:

> In *Reed v. Campbell*, 476 U.S. 852, 855-56, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the United States Supreme Court noted the difference between the way an "open" probate and a "closed" probate should be treated: "After an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims, even though they may be meritorious and even though mistakes of law or fact may have occurred during the probate." Because of these concerns, a court should be cautious before reaching back in time to evaluate errors made during the administration of a closed probate estate. *Pitzer [v. Union Bank of California]*, [141 Wash.2d 539, 9 P.3d 805,] 811 [ (Wash. 2000) ].

*In re Estate of Novakovich*, 2004 WY 158, ¶ 26, 101 P.3d at 937-38.

[¶23] Here, because there was no appeal from the decree, it is a final judgment, regardless of the terms in Mr. Smith's Will. *Estate of Dahlke*, 2014 WY 29, ¶ 42, 319 P.3d at 127. We will not "reach back in time" over thirty years to collaterally attack the probate order and evaluate errors that may have been made in the ancillary administration of Mr. Smith's estate. The district court properly concluded that the California probate order adopted by the Wyoming court controls the distribution of Mr. Smith's Wyoming property.

### Ancillary Administration

[¶24] "The term 'ancillary administration' does not connote a subordinate or inferiority to the domiciliary administration. Ancillary administration is simply the probate that occurs where a decedent had property but was not domiciled at the time of his death." *In re Estate of Reed*, 768 P.2d 566, 569 n.3 (Wyo. 1989) (citing *First Nat'l Bank of Brush, Colo. v. Blessing*, 98 S.W.2d 149,

---

4. "It is not enough for the contract to merely mention the instrument; the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument." *Pennaco Energy, Inc. v. KD Co., LLC*, 2015 WY 152, ¶ 79, 363 P.3d 18, 39 (Wyo. 2015). Further, a "reference in a contract to another instrument will incorporate the other instrument only to the extent indicated and for the specific purpose indicated." *Id.*

151 (Mo. Ct. App. 1936)). *See also In Re Smith's Estate*, 55 Wyo. 181, 97 P.2d 677, 683-84 (Wyo. 1940); *In re Estate of DeChabert*, 43 V.I. 27, 30, 2000 WL 1515175, at *2 (Terr.V.I. 2000). Ancillary administration is required because a will that has been probated in one state "is not effective as a ... conveyance of title to property that is situated in another state ... until the will has been proved and recorded in the latter jurisdiction ...." 79 Am. Jur. 2d *Ancillary or reprobate of will of nonresident* § 713 (2013).

[¶25] "Wyoming's law directly dealing with the matter of ancillary administration is sparce and fragmented." Lawrence H. Averill, Jr., *Wyoming's Law of Decedents' Estates, Guardianship and Trusts: A Comparison with the Uniform Probate Code – Part III*, IX Land & Water L. Rev. 567, 568 (1974).[5] Chapter 11 of the Wyoming Probate Code sets forth two related options [6] for the ancillary administration of a foreign will in Wyoming. The first allows a will that has been admitted to probate in another state to be probated in Wyoming if it complies with either that state's or Wyoming's statutory requirements for execution. Wyo. Stat. Ann. § 2-11-104 (1977 Repub. ed., Michie 1980). This option, "does not, however, affect the manner in which the estate must be administered after the will is probated. It is merely a procedure to permit probate of foreign executed wills." Averill, *supra*, IX Land & Water L. Rev. at 569. Under this option, full and formal probate of the foreign will occurs in Wyoming probate courts. *See* Wyo. Stat. Ann. § 2-11-104.

[¶26] The second option provides a "reasonably viable alternative to full formal administration." Averill, *supra*, IX Land & Water L. Rev. at 570. It applies to smaller estates [7] and allows the probate in Wyoming to "be dispensed with upon the filing" of "a petition under oath showing the facts in the case together with certified copies of the petition, order of appointment of executor or administrator, inventory, and final decree of distribution" and a showing that the debts of the estate have been paid. Wyo. Stat. Ann. § 2-11-201 (1977 Repub. ed., Michie 1980). The court gives notice by publication "of the intention of the petitioner to have the probate proceedings admitted in this state as a probate of the estate," and if no objection is made, "the judge shall make an order admitting the certified copies of the proceedings in the estate to record in his court and they shall be considered and treated from that time as original proceedings in his court and shall be conclusive evidence of the facts therein shown." *Id.* A proceeding under this section does not require the filing of the will because this abbreviated ancillary probate provides a method by which probate in a different state substitutes for the procedure in Wyoming. The foreign state's decree of distribution is merely adopted by the Wyoming court as its own. *Id.*

### Ancillary Administration of Lon V. Smith's Wyoming Estate

[¶27] The second option was the one chosen to distribute Mr. Smith's Wyoming prop-

---

5. Wyoming's Probate Code underwent substantial revision in 1979 and 1980. *See In re Estate of Meyer*, 2016 WY 6, ¶ 26, 367 P.3d 629, 637 (Wyo. 2016); Lawrence H. Averill, Jr., *The Wyoming Probate Code of 1980: An Analysis and Critique*, XVI Land & Water L. Rev. No. 1, 103, 105-06 (1981). However, with the exception of an increase in value of property eligible for abbreviated ancillary probate (discussed *infra* ¶ 26 n.7) and additional authority granted to personal representatives in ancillary probate, the "sweeping changes" to the probate code had little effect on ancillary probate in Wyoming. *See* Averill, *supra*, XVI Land & Water L. Rev. No. 1 at 175-77. Further, the statutes governing ancillary probate have not changed significantly since the 1979 and 1980 revisions. *Compare* Wyo. Stat. Ann. § 2-11-201 (1977 Repub. ed., Michie 1980) *with* Wyo. Stat. Ann. §§ 2-11-201 through 2-11-202 (LexisNexis 2017).

6. A third alternative applies in situations where the foreign law does not require probate. *See* Wyo. Stat. Ann. § 2-11-105 (LexisNexis 2017). That option is not relevant to our discussion here.

7. Currently this provision may be used when property located in the state does not exceed $200,000 in value. Wyo. Stat. Ann. § 2-11-201 (LexisNexis 2017). In 1985, when Mr. Smith's estate was probated in Wyoming, this provision was available when the value of property located in Wyoming did not exceed $30,000. Wyo. Stat. Ann. § 2-11-201 (1977 Repub. ed., Michie 1980). The value of Mr. Smith's Wyoming property did not exceed that limit when he died, presumably because no wells had been drilled on the lease at that time.

erty after he died. The Wyoming ancillary probate order provides:

> THE ABOVE ENTITLED MATTER came on for hearing upon the Petition of Marguerite B. Smith to dispense with the probate of Lon V. Smith, Deceased, in accordance with the provisions of Section 2-11-201, W.S. 1977, as amended.

The court acknowledged that a hearing was set and held, publication of the notice was made, that no creditor or other interested person had appeared to object to the proceedings, and that the court had jurisdiction over the matter. The court then ordered:

> [T]he certified copies of the proceedings in the Matter of the Estate of Lon V. Smith, in the Superior Court of the State of California, for the County of Los Angeles, as Case Number 647973, herein filed by Marguerite B. Smith, as Petitioner, on February 8, 1985, be and *they are hereby admitted to this Court and to be considered and treated as original proceedings of this Court* and as conclusive evidence of the facts therein shown.

(Emphasis added.)

[¶28] The Foundation relies upon *Hawks v. Creswell*, 60 Wyo. 1, 144 P.2d 129 (1943), to argue that in an ancillary probate proceeding under Wyo. Stat. Ann. § 2-11-201, the court may look to more than just the foreign decree, and in this case, the district court should have looked to the Will to determine the ownership of the ORRI. *Hawks* involved the ancillary probate under Wyo. Rev. Stat. Ann. § 88-918 (1931)[8] of Wyoming property that had belonged to an Illinois resident. 144 P.2d at 130. The ancillary probate in *Hawks* admitted the "certified transcript of the proceedings" that had occurred in Illinois, including a copy of the will. *Id.* To determine ownership of the property in question, the *Hawks* court looked to the terms of the will and concluded that the property fell within the residuary clause of the will. *Id.* at 130-31, 133. *Hawks*, however, does not stand for the proposition that when a will and decree are admitted in an ancillary proceeding, the court

must look to the will to determine how property passes. In fact, we cannot tell from the language of the opinion whether the transcript of proceedings admitted in the Wyoming court also included a copy of the Illinois probate decree; such a document is not mentioned at all in the opinion. *Id.* Thus, *Hawks* provides little guidance in this case.

 [¶29] The Foundation also asserts that the Wyoming order did not adopt the distribution under the California probate order, but only adopted the "conclusive evidence of the facts" established in the California probate proceeding. In making this argument, the Foundation contends that the only relevant "facts" in the California probate proceeding are things like notice to creditors, payment of estate taxes, and valid execution of the Will. This argument is at odds with the purpose of Wyo. Stat. Ann. § 2-11-201, which is to distribute the estate of a nonresident with the adoption of another state's decree of distribution. If we were to accept the Foundation's argument, the abbreviated ancillary administration provided by § 2-11-201 would vanish. Under the Foundation's reasoning, § 2-11-201 would merely allow Wyoming courts to incorporate a foreign jurisdiction's findings as to validity of the Will, but they would have to make their own findings as to proper distribution. This result conflicts with the plain language of the statute allowing "the probate of the estate in [Wyoming to be] dispensed with upon" the filing of certain documents. Wyo. Stat. Ann. § 2-11-201.

[¶30] Wyo. Stat. Ann. § 2-11-201 states that, after all of the prerequisites are met, "the judge shall make an order admitting the certified copies of the proceedings in the estate to record in his court and they shall be considered and treated from that time as original proceedings in his court and shall be conclusive evidence of the facts therein shown." We will not impose a different meaning on a statute beyond its unambiguous terms. *In re Gifford*, 2013 WY 54, ¶ 12, 300 P.3d 852, 856 (Wyo. 2013). Here, the statute

---

8. Wyo. Rev. Stat. Ann. § 88-918 (1931) is a predecessor to Wyo. Stat. Ann. § 2-11-201 and contains almost identical language, except that the 1931 version requires property value to be below $10,000 and also states that the ancillary probate may not occur until one year after the decedent's death.

provides that the court "shall" admit "certified copies of the proceedings in the estate" and that those proceedings are treated "as original proceedings" of the court. Wyo. Stat. Ann. § 2-11-201.

The plain meaning of the term "proceedings" is broad, especially when phrased in the plural. *Black's Law Dictionary* 1324 (9th ed. 2009) defines "proceeding" as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment."

*Ultra I*, 2010 WY 36, ¶ 153, 226 P.3d at 936. The foreign court's decree of distribution is one of the specific documents required by the statute to be "admitted" and treated "as original proceedings." The will is not. Thus, § 2-11-201 provides for the adoption of the final decree of distribution as if it were originally entered in the Wyoming court. Accordingly, when the district court "admitted" the California proceedings as "original proceedings" of the court, the California probate order became an order of the Wyoming court pursuant to § 2-11-201.

[¶31] The Foundation also argues that the California probate order cannot distribute property in Wyoming because California courts do not have jurisdiction over Wyoming property. It is true that foreign states do not have jurisdiction to distribute property in Wyoming. *See Estate of Reed*, 768 P.2d at 570. Indeed, the purpose of ancillary administration is to distribute property owned in one state by a decedent who was domiciled in a different state. 79 Am. Jur. 2d, *supra*, § 713. However, once the California proceedings were admitted as original proceedings in the Wyoming court, the probate order became an order of the Wyoming court; which had jurisdiction to distribute property in Wyoming. Wyo. Stat. Ann. § 2-11-201.

### California Probate

[¶32] We must therefore look to the California probate order to determine the owner of the ORRI. The order provides that Mrs. Smith is to receive a life estate "in and to all mineral interests, oil and gas leases and properties ..., all described as follows:" Immediately following that language, the next

94 pages of the order describe oil and gas interests that are to pass to Mrs. Smith as life estates. None of those pages contain a description of the federal BLM lease or the ORRI reserved by Mr. Smith. The order goes on to distribute to the Foundation an interest in "all mineral interests, oil and/or gas leases, properties, royalties, rentals and contracts, all as more particularly described in Pages 11 through 105 of this Order" after the death of Mrs. Smith. The order does not provide the Foundation with an interest in the federal lease or the ORRI at issue here. Rather, the order distributes the "rest, residue and remainder of said Estate, both real and personal, and wherever situated ... whether described herein or not" to Mrs. Smith. The district court correctly concluded that since the ORRI was not specifically described in the order, it was distributed via the residuary clause to Mrs. Smith in fee simple.

[¶33] The Foundation next contends that the ORRI qualifies as "other and after-discovered" property and therefore must pass according to the Will. Paragraph 4.G of the California probate order states that "other and after-discovered property ... [will] be distributed in accordance with decedent's said Last Will *to the said Marguerite B. Smith*." (Emphasis added.) The Foundation asks us to write out the last phrase, which directs that the property be distributed to Marguerite B. Smith. We will not interpret this decree in a way that renders a portion of it meaningless. *See Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue*, 2017 WY 6, ¶ 26, 387 P.3d 725, 732 (Wyo. 2017). Even if we agreed with the Foundation that the ORRI is other and after-discovered property, it would have passed to Mrs. Smith under the terms of the California probate order. However, we disagree that the ORRI is "other and after-discovered property," and conclude that it is residue and falls in the residuary clause of the order. The California probate order distributes property in an organized fashion. First, it provides for attorney fees to the attorneys of the estate. Next, paragraphs 4.A through 4.E distribute certain specified business, personal and real estate interests to various people and entities. Paragraph 4.F

gives to Marguerite B. Smith "the rest, residue and remainder" of the estate "wherever situated ... whether described herein or not." Finally, paragraph 4.G is a catch-all for "other and after-discovered" property. The ORRI falls in the residuary clause.

 [¶34] "The portion of an estate left after all debts and legal charges have been paid and other testamentary gifts have been satisfied is variously termed the 'residuary,' the 'residue,' or the 'residuary estate.'" 96 C.J.S. *Wills*, § 1322 (2011). The purpose of a residuary clause "is to prevent partial intestacy." *In re Estate of Stanton*, 2005 WY 74, ¶ 21, 114 P.3d 1246, 1251 (Wyo. 2005). Such clauses "cover everything which is not otherwise disposed of in other parts of the will." *Id.*; *see also* 96 C.J.S., *supra*, § 1322. The parties agree that the ORRI here was not subject to any distribution in the order and that it was a known interest. Therefore, it falls under the residuary clause of the probate order as part of the "rest, residue and remainder" of Mr. Smith's estate.

 [¶35] The Foundation claims that if we conclude, as we do, that the ORRI falls in the remainder of the estate, the catch-all paragraph 4.G disposing of "other and after-discovered" property, is rendered meaningless. We apply contract construction principles when we construe court orders. *Tafoya v. Tafoya*, 2013 WY 121, ¶ 15, 309 P.3d 1236, 1240 (Wyo. 2013). "Our rules of [contract] interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning." *Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 35, 351 P.3d 943, 953 (Wyo. 2015) (citations omitted). We read paragraph 4.G in context and in light of all the other provisions in the probate order. If we were to conclude that any property that was not covered by the specific provisions in the order is to be considered "other or after-discovered" property, there would be no need for paragraph 4.F, which distributes the residue. We presume that each provision has a purpose and will avoid a construction rendering any provision meaningless. *Id.* Paragraph 4.G serves a different purpose—it distributes after-discovered property. After-discovered property is an asset of an estate that

"come[s] to light after the probate proceedings are completed[.]" Patrick Z. Riley & Mary M. Rudser, *Transfer of Assets and Discharge of Representative*, California Decedent Estate Practice, § 32.84 (2d ed. May 2017 Update). Typically, "the order of final distribution includes an omnibus clause directing distribution of after-discovered property." *Id.* Paragraph 4.G is such a clause in the probate order here. The ORRI is not after-discovered property; it is residue and must be distributed according to paragraph 4.F of the probate order.

### Corrective Affidavits

 [¶36] Finally, the Foundation argues that even if the California probate order controlled distribution at one time, corrective affidavits provided notice that the terms of the Will ought to control. In 1987, "corrective affidavits" were filed in Natrona and Carbon counties, stating that the California probate order "fails to provide for the disposition of property located other than in the State of California; therefore, the terms of the Last Will and Testament of Lon V. Smith, deceased, control the disposition of property" in Wyoming. Attached to the affidavits were copies of Mr. Smith's Will.

 [¶37] The district court reasoned that a decree of distribution takes precedence over a conflicting will because it "makes sense from a records notice perspective." The court explained that Wyoming's probate code requires a judgment or decree entered by a probate court affecting title to real property to "be recorded in the office of the county clerk of the county in which the property is situated." Wyo. Stat. Ann. § 2-2-301 (LexisNexis 2017). This was done in this case. The probate code does not, however, require a will to be recorded. "Thus, a title search in the county land records would reveal only the probate court's decree and not the conflicting will, which would put later interested parties at a distinct disadvantage when relying on public land records if the will was to control."

[¶38] The Foundation contends that because the corrective affidavits attaching the Will were recorded in the public land rec-

ords, the Will was available to any parties interested in reviewing the chain of title, and thus the district court's reasoning is not convincing. It argues that because those affidavits were recorded more than thirteen years before wells were drilled on the lease, all interested parties had notice of the provisions of the Will at any relevant times, and as a result, lack of notice is not at issue here. This contention is another way of arguing that the Will ought to supersede the probate decree, which, as we discussed *supra* ¶ 20-21, is contrary to the law.

[¶39] More significantly, our statutes set forth specific subjects upon which affidavits affecting title to real estate may be filed, and attaching a will in an attempt to modify or clarify the terms of a probate decree is not one of them.

> The affidavits may relate to the following matters: age, sex, birth, death, relationship, family history, names, identity of parties, marital status, homestead status, possession, occupancy possession, residence, service in the armed forces, conflicts and ambiguities in descriptions of land in recorded instruments, and the happening of any condition or event which may terminate an estate or interest.

Wyo. Stat. Ann. § 34-11-101(b) (LexisNexis 2017). The "corrective affidavits" filed in Natrona and Carbon counties did not comply with this Wyoming statutory provision because they were not filed for a listed reason. Therefore the corrective affidavits cannot affect title to the ORRI at issue, and they do not alter the terms of the probate order. The district court correctly concluded that the California probate order adopted by the Wyoming court controls the distribution of Mr. Smith's Wyoming property. We affirm summary judgment in favor of Devon.

## II. Did the district court properly dismiss the Foundation's claim that Devon violated Wyo. Stat. Ann. § 30-5-302 when it is undisputed that Devon held ORRI proceeds in Devon's own "suspense account" and not in an interest-bearing account in a Wyoming financial institution?

[¶40] The parties do not dispute that between 2007 and 2014 Devon placed approximately $80,000 in ORRI payments in an internal "suspense account." In 2014, Devon transferred its interest in the lease, including the suspense account related to the lease, to Linn. Linn, an original defendant in the Foundation's lawsuit, settled with the Foundation, and as part of that settlement, paid the proceeds contained in the suspense account to the Foundation.

[¶41] The Foundation claimed that Devon violated the WRPA when it failed to properly hold suspended funds in an interest-bearing escrow account as required by Wyo. Stat. Ann. § 30-5-302. The district court granted summary judgment to Devon on this claim, concluding that the determination that the Foundation was not entitled to receive royalty payments, "controls the outcome for the remaining cross motions for summary judgment : ...." On appeal, the Foundation argues that this conclusion was erroneous because Devon owed a statutory duty to properly maintain the suspended funds in an escrow account for the benefit of the eventual interest owner, which it claims it is. Wyo. Stat. Ann. § 30-5-302 (LexisNexis 2017) provides in part:

> Any delay in determining any *person legally entitled to an interest in the proceeds* from production shall not affect payments to all other persons entitled to payment. In instances where payment cannot be made for any reason within the time limits specified in W.S. 30-5-301(a), the lessee or operator, purchaser or other party legally responsible for payment shall deposit all proceeds credited to *the eventual interest owner* to an escrow account in a federally insured bank or savings and loan institution in Wyoming, using a standard escrow document form approved by the attorney general of Wyoming, which deposit shall earn interest at the highest rate being offered by that institution for the amount and term of such deposits.

(Emphasis added.)

[¶42] Devon admits that it did not comply with the terms of the statute—it held funds in a "suspense account" and did not deposit them in a Wyoming financial institution where they would earn interest. However,

Devon argues the assertion of a violation does not establish a valid claim under the WRPA if the party asserting the claim is not legally entitled to the proceeds. In *Ultra I*, we explained that "the only way to bring a WRPA claim is in the course of bringing an action on the document which creates the right to the mineral royalty." 2010 WY 36, ¶ 154, 226 P.3d at 936. "[T]he person seeking protection of the act must be 'legally entitled' to the payment." *Id.* at ¶ 73, 226 P.3d at 917.

[¶43] The *Ultra I* plaintiffs, owners of net profit interests in oil and gas leases, brought claims against operator and non-operator working interest owners, alleging that payments had been withheld, in violation of the WRPA. One of many issues on appeal concerned net profit payments that the plaintiffs argued were due. *Id.* at ¶ 2, 226 P.3d at 898. The Unit Net Profit Interest Contract "required the plaintiffs to give notice of their ownership before defendants were obligated to pay the net profits." *Id.* at ¶ 61, 226 P.3d at 914. The district court found that the required notice was provided in a February 2006 letter and that payments were due after that time. *Id.* at ¶¶ 61, 63, 226 P.3d at 914, 915. Plaintiffs claimed on appeal that under the WRPA they were entitled to payments of net profits for the entire time the leases were profitable, not just after the time they provided notice. *Id.* at ¶¶ 65, 68, 226 P.3d at 915, 916. We affirmed, holding that "[t]he WRPA does not provide a remedy to plaintiffs in this instance because the person seeking protection of the act must be 'legally entitled' to the payment. The plaintiffs were not 'legally entitled' to payment of the [net profits interest] until they provided the notice required by [the contract]." *Id.* at ¶ 73, 226 P.3d at 917.

[¶44] Here, we have determined that the Foundation was not legally entitled to the ORRI, *see supra* ¶ 39. The Foundation argues that even if it is not "legally entitled" to royalty payments, it is the "eventual interest owner" because under the terms of its settlement with Linn, Linn paid the funds in the suspense account to the Foundation. Therefore, the Foundation contends that it has established a claim under the WRPA. We analyze the language in statutes "as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*." *BP Am. Prod. Co. v. Dep't of Revenue*, 2005 WY 60, ¶ 15, 112 P.3d 596, 604 (Wyo. 2005) (citation omitted). Reading the statute as whole, there can be no doubt that the "eventual interest owner" refers to the "person legally entitled" to the proceeds during the time that person is unknown and the payments are in escrow. Wyo. Stat. Ann. § 30-5-302; *see also Ultra I*, 2010 WY 36, ¶ 73, 226 P.3d at 917. The fact that Linn paid the suspense account monies to the Foundation does not make it the "interest owner."

[¶45] The Foundation is not the owner of the ORRI and therefore it is not the "person legally entitled" to the proceeds and cannot make a claim under Wyo. Stat. Ann. § 30-5-302. The district court's summary judgment in favor of Devon is affirmed.

### III. Is either party entitled to attorney fees under WRPA?

 [¶46] Both Devon and the Foundation moved the district court for attorney fees and costs under the WRPA. The district court denied their motions, concluding that neither Devon nor the Foundation could recover attorney fees because application of the WRPA is "limited to cases wherein the parties had a 'preexisting legal relationship.'" (citing *ANR Prod. Co. v. Kerr-McGee Corp.*, 893 P.2d 698, 705 (Wyo. 1995)). Both Devon and the Foundation appeal. The Foundation contends that claims brought under the WRPA, seeking a remedy under Wyo. Stat. Ann. § 30-5-302 (which requires delayed royalty payments to be deposited into a Wyoming interest-bearing escrow account), do not require any legal relationship, and that it is the prevailing party because it was the eventual interest owner of the proceeds that Devon had placed into its suspense account. Devon argues more generally that while establishing a claim under the WRPA requires a pre-existing legal relationship, bringing a claim "pursuant to" the WRPA does not, and that it is the prevailing party because the district court, and now this Court, agree with its position that the Foundation is not entitled to the ORRI.

[¶47] Wyoming follows the American rule regarding attorney fees. That rule requires each party to pay its own attorney fees unless there is an express contractual or statutory authority for an award of fees. *Ultra Res., Inc. v. Hartman*, 2015 WY 40, ¶ 71, 346 P.3d 880, 903 (Wyo. 2015) (*Ultra II* ). The attorney fee provision in the WRPA provides:

> § 30-5-303. Penalty for production; penalty for violations; jurisdiction; costs and fees.
>
> (a) Any lessee or operator, purchaser or other *party legally responsible for payment who violates the provisions of this article is liable to the person or persons legally entitled to proceeds from production* for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date specified in W.S. 30-5-301(a).
>
> (b) The district court for the county in which a well producing oil, gas or related hydrocarbons is located has jurisdiction over all proceedings brought pursuant to this article and *the prevailing party in any proceedings brought pursuant to this article shall be entitled to recover all court costs and reasonable attorney's fees.*

Wyo. Stat. Ann. § 30-5-303 (emphasis added). Both parties are asking this Court to determine that they are the "prevailing party" entitled to legal fees and costs. We must look at the statute as a whole to determine who is "legally entitled" to receive payments under § 30-5-303(a) before we consider who is the "prevailing party" under § 30-5-303(b).

[¶48] In *ANR Prod. Co. v. Kerr-McGee Corp.*, 893 P.2d 698, 700-01 (Wyo. 1995), Kerr-McGee's predecessor in interest was designated as the operator of the Powell Pressure Maintenance Unit (the Unit) which was formed to produce hydrocarbons from what was known as the First Bench, a particular hydrocarbon reservoir. The Unit agreement provided that individual oil and gas lessees could develop zones other than the First Bench that were located in the same geographical area as the Unit. *Id.* at 700. ANR obtained approval from the Unit to develop a well in the Second Bench, a geologically distinct reservoir located in the Unit. *Id.* ANR's production required hydraulic fracturing which, according to Kerr-McGee, caused hydrocarbon to be drained from the First Bench into the Second Bench and recovered by ANR. *Id.* Kerr-McGee sought damages against ANR and the district court concluded that ANR had breached its contractual obligations to the Unit and had converted oil from the Unit, and granted judgment in favor of Kerr-McGee. *Id.* at 700-01.

[¶49] On appeal, Kerr-McGee contended that it was the prevailing party entitled to interest and attorney fees under §§ 30-5-301(a)[9] and 30-5-303 of the WRPA. *Id.* at 705. We held:

> *The Legislature's intent, as expressed in the plain language of the statutory provisions, was to limit the application of the Act to cases where a preexisting legal obligation for payment of the proceeds of the sale of hydrocarbon exists.*
> ... The Legislature expressly stated that the proceeds shall be paid to "all persons legally entitled thereto" by any party "legally responsible for payment." §§ 30-5-301(a), -303(a). The Legislature's repeated use of the term "legally" indicates that the Act was intended to apply only in cases where the parties had a prior relationship.
> The Act presupposes that the party who was responsible for the payment had a right and an obligation to sell the hydrocarbons for the party who was legally entitled to receive the proceeds.

*Id.* at 705 (emphasis added). We concluded that even though Kerr-McGee prevailed in its claim for damages, because ANR and Kerr-McGee had no prior relationship which would have entitled ANR to produce or sell unitized First Bench hydrocarbons, Kerr-McGee could not recover interest or attorney fees under the WRPA. *Id.* at 706.

[¶50] More recently, in *Ultra I*, 2010 WY 36, ¶¶ 93-96, 226 P.3d at 922, we addressed a

9. Wyo. Stat. Ann. § 30-5-301(a) (LexisNexis 2017) provides that "proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled thereto ...."

similar claim. In that case, plaintiffs, the owners of net profit interests in oil and gas leases, brought claims against operator and non-operator working interest owners, alleging that payments had been withheld, in violation of the WRPA. In addition to granting summary judgment in favor of the operator, the district court granted the non-operating defendants judgment as a matter of law on the plaintiffs' WRPA claims, concluding that the non-operators were not governed by the WRPA. *Id.* at ¶ 91, 226 P.3d at 921. The plaintiffs appealed and we held:

> [T]he WRPA applies only to parties contractually obligated to actually remit payments to royalty interest owners. In that respect, the term "legally responsible for payment" modifies "any lessee or operator, purchaser or other party." This interpretation is confirmed by § 30-5-301(a) which we read *in pari materia* with § 30-5-303(a). Section 30-5-303(a) states clearly that the payment must be made by the party contractually required to do so: "Payment shall be made directly to the person . . . entitled thereto by the lessee or operator or by any party who assumes such payment obligation under any legal arrangement."

*Id.* at ¶ 95, 226 P.3d at 922. Because the operator was responsible for accounting to and actually paying the net profit interest owners, we held that the "non-operator working interest owners were not responsible to the plaintiffs under the WRPA." *Id.* at ¶ 96, 226 P.3d at 922.

[¶51] Both in the district court and on appeal, the non-operators argued that they were the prevailing parties under the WRPA because the plaintiffs' claims were unsuccessful and they were therefore entitled to attorney fees. *Id.* at ¶ 150, 226 P.3d at 936. We examined § 30-5-303(b), which provides that the prevailing party "in any proceedings brought pursuant to this article" is entitled to a fee award. *Id.* at ¶ 153, 226 P.3d at 936. We looked to the "plain meaning of the term 'proceedings' [and concluded it] is broad, especially when phrased in the plural." *Id.* We held:

> A broad reading of the term "proceedings" is especially apt in the context of the

WRPA where *the right to bring an action under the act is contingent upon the existence of a preexisting contractual obligation. In other words, the only way to bring a WRPA claim is in the course of bringing an action on the document which creates the right to the mineral royalty.* See, e.g., *Ferguson* [*v. Coronado Oil Co.*], 884 P.2d [971,] 976 and 979 [ (Wyo. 1994) ]. So, in this case, where the non-operator defendants were found liable under the Unit NPI Contract but not responsible for WRPA penalties and interest because they were not obligated to actually remit the payment to the plaintiffs, it is appropriate, as a matter of law, to conclude that the non-operators were not the prevailing parties in the proceedings.

*Id.* at ¶ 154, 226 P.3d at 936-37 (emphasis added). By contrast, the operator defendants, who had a pre-existing legal relationship with the plaintiffs, were ultimately required to pay legal fees and costs to the plaintiff, the prevailing parties under the WRPA. *Ultra II*, 2015 WY 40, ¶¶ 72-81, 346 P.3d at 904-06.

[¶52] Like the parties in *ANR* and the plaintiffs and non-operating defendants in *Ultra I*, the Foundation and Devon have no pre-existing legal relationship which entitled the Foundation to the royalty payments at issue. Because the right to bring an action under the WRPA is contingent upon the existence of such a contractual obligation, *Ultra I*, 2010 WY 36, ¶ 154, 226 P.3d at 936-37, the Foundation did not have a statutory right to seek relief under the WRPA. Accordingly, neither the Foundation nor Devon is entitled to attorney fees because neither party was the prevailing party in a proceeding brought pursuant to the WRPA. The district court did not err by failing to grant either party attorney fees. *Accord, Moncrief v. Harvey*, 816 P.2d 97, 109 (Wyo. 1991) (since defendant working interest owner was not a person responsible for payment under the WRPA, it was not liable for attorney fees or costs under the WRPA, and giving no indication that plaintiff was liable to defendant for attorney fees under the WRPA fee provision).

[¶53] Devon argues that this interpretation limits the fee provision's language

awarding fees in "any proceedings brought pursuant to [the WRPA]" to only proceedings where the royalty owner prevails, and "in effect, replaces the term 'prevailing party' with 'prevailing royalty owner' or 'prevailing plaintiff.'" We do not agree. Wyo. Stat. Ann. § 30-5-303(b) states that the "prevailing party in any proceedings brought pursuant to" the WRPA is entitled to attorney fees. The plain meaning of the term "party" in § 30-5-303(b) means either the plaintiff or the defendant. *Black's Law Dictionary* 1154 (8th ed. 2004) defines "party" as "[o]ne by or against whom a lawsuit is brought." The Legislature also intended, "as expressed in the plain language of the statutory provisions [§§ 30-5-301(a) and 30-5-303(a)], to limit the application of the Act to cases where a preexisting legal obligation for payment of the proceeds of the sale of hydrocarbons exists." *ANR*, 893 P.2d at 705. We read statutory language in *pari materia*, giving meaning to all parts of a statute. *Sikora v. City of Rawlins*, 2017 WY 55, ¶ 23, 394 P.3d 472, 479 (Wyo. 2017). The confluence of these provisions indicates that the Legislature intended either a prevailing plaintiff or a prevailing defendant to recover fees under the WRPA so long as there is a valid WRPA claim which is "contingent upon the existence of a pre-existing contractual obligation." *Ultra I*, 2010 WY 36, ¶ 154, 226 P.3d at 936. Thus, if a royalty owner sues an operator with which it has a contractual relationship claiming a violation of the WRPA but does not meet its burden to prove that the violation occurred, the operator would be the prevailing party and would be entitled to fees and costs under the fee provision.

[¶54] Further, while we do not resort to an examination of policy when a statute is unambiguous, *see In re Estate of Meyer*, 2016 WY 6, ¶ 21, 367 P.3d 629, 636 (Wyo. 2016), we note that our reading of the fee provision is consistent with the policy underlying the WRPA. "The WRPA is intended to stop oil and gas producers from retaining other people's money for their own use." *Ultra I*, 2010 WY 36, ¶ 70, 226 P.3d at 916 (citations omitted); *see also Moncrief*, 816 P.2d at 105. The WRPA was designed to level the playing field between royalty interest owners and oil and gas producers. *See*

Brandin Hay, *Wyoming Royalty*, XXXI Land & Water L. Rev. 823, 824-25 (1996). We have held that the WRPA "is intended to be remedial and is liberally construed." *Ultra I*, 2010 WY 36, ¶ 70, 226 P.3d at 916 (citing *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 979 (Wyo. 1994)). Our reading of the plain language of the statute comports with this intent.

[¶55] The district court correctly determined that the WRPA is not applicable in this case because Devon and the Foundation have no pre-existing legal relationship which would require Devon to pay fees on the ORRI at issue in this case. The district court's denial of Devon's and the Foundation's motions for attorney fees is affirmed.

## CONCLUSION

[¶56] The ancillary probate proceeding in Wyoming adopted the California probate order which distributed the ORRI to Mrs. Smith, in fee simple, and it passed to the Trust when she died. Accordingly, we affirm the district court's entry of summary judgment in favor of Devon and against the Foundation on the issue of ownership of the ORRI. Since the Foundation cannot establish it was legally entitled to receive royalty payments, it could not assert a claim under the WRPA, therefore we also affirm the district court's grant of summary judgment to Devon on the Foundation's claim that Devon violated the WRPA. Finally, we affirm the district court's ruling on attorney fees; the WRPA is not applicable in this case because Devon and the Foundation do not have a pre-existing legal relationship that requires Devon to pay the royalties to the Foundation, thus neither party is entitled to attorney fees under the WRPA.